CASE 35.—ACTION BY R. H. EDELEN AND OTHERS AGAINST W. B. SAMUELS & CO. TO ENFORCE SPECIFIC PERFORMANCE OF A CONTRACT.—June 25.

# Edelen, &c., v. Samuels & Co.

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

From a judgment sustaining a general demurrer to the petition, plaintiff appeals.—Affirmed.

1. Specific Performance — Grounds of Relief — Inadequacy of Other Remedy.—The right to a decree of specific performance of a contract relating to realty or personalty is based on the fact that damages for a breach cannot be adequately compensated at law.

2. Same—Discretion of Court.—The discretion of the court in granting or refusing the remedy of specific performance of a contract is not an arbitrary, but a legal, discretion.

3. Same—Contracts Enforcible.—A contract for the sale of the product of a distillery for five years, with the privilege of the buyer to buy the product for an additional period of five years, according to conditions specified in an instrument, binding the distiller to manufacture a specified number of barrels during each distillery season, with the option of the buyer to require an additional number, and to establish and maintain a bottling room suitable for bottling in bond the product of the distillery as may be required by the buyer, etc., will not at the suit of the buyer be specifically enforced because of the difficulties of performance, and because of the adequacy of the remedy at law for damages for a breach.

JOHN S. KELLEY for appellants.

GEO. S. & JNO. A. FULTON of counsel.

Edelen, etc., v.| Samuels & Co.

## POINTS AND AUTHORITIES.

1. The contract is valid and binding because it is alleged that the appellee corporation executed it, which is confessed by the demurrer.

2. Courts of equity will decree the specific performance of contracts respecting personalty as well as realty if no adequate and correct compensation can be made in damages. Pomeroy's Specific Performance, 2d ed., p. 8, note 3, same page, and pp. 9-11-13; Merwin's Principles of Equity, secs. 5, 6.

3. Contracts for the delivery of goods will be specifically enforced where the deliveries are to be made and purchase price paid through a number of years, they differ from those contracts that are to be immediately executed. Pomeroy, sec. 15, p. 20, note 2 to 15; Buxton v. Leister, 3 A. T. K., 384; Ball v. Coggs, 1 Bro. P. C., 140; (Tom 1st ed.), Chamberlin v. Blue, 6 Black, 491.

4. The right to specific performance of a valid contract depends upon circumstances, conditions and incidents and the discretion of the chancellor is not arbitrary. Pomeroy's Specific Performance, sec. 36, p. 52; sec. 38, p. 57; Merwin's Principles of Equity, secs. 64, 65, 66.

5. Where the questions are numerous issues complex, damages, uncertain or inadequate a court of equity only can give adequate and complete relief, and will enforce the specific performance of the contract. Pa. R. R. Co. v. St. L., etc., R. R. Co., 118 U. S., 187; Schmidt v. L. & N. R. R. Co., 101 Ky., 411; Joy v. St. Louis R. R. Co., 138 U. S., 1; Franklin Tel. Co. v. Harrison, 145 U. S., 459; Prospect Park & Coney Island R. Co. v. Coney Island & Brooklyn R. Co., 26 R. A., 610; Union Pacific Ry. Co. v. Chicago M. & St. Paul R. Co., 163 U. S., 564.

6. The various covenants in the contract are sufficient consideration for the optional agreement for sale of distillery plant: Bacon v. Ky. Central Ry. Co., 95 Ky., 375.

NAT W. HALSTEAD for appellee.

JOHN W. LEWIS of counsel.

1. The paper claimed to be a contract is not the act or deed of appellee, and is therefore not a contract in the law, because said paper was not executed in the manner and mode provided by the statute law of the Commonwealth of Kentucky governing and controlling private corporations in the conduct of their business.

2. Appellants are not entitled to a judgment for specific performance of the contract relied upon, because it is an option contract; and an option contract can not be enforced by a court of equity because of a want of mutuality of obligation.

3. A court of chancery will not undertake to frame a decree of specific performance of a contract, and cannot do so, where it involves a continuous and long series of acts running through a long term of years, requiring the exercise of supervision as to all the matters, and requiring special skill and knowledge, and repeated examinations and due directions, such as would be required in the enforcement of the contract in the case at bar, in the operation of a distillery and manufacture of whisky, covering the many and varied provisions contained in the contract in controversy.

4. A court of equity will not decree the performance of an illegal act or of an unlawful contract.

5. Because of the fact that the court could not decree a specific performance of this contract as against the appellants, the court will not, and ought not, by injunction as against the appellee, grant what is termed negative relief to the appellants, because of the want of mutuality in the contract.

### AUTHORITIES CITED.

Hudson, etc. v. Scottish Union & National Insurance Co., 23 Ky. Law Rep., 116; Miller, etc., v. McConnell, etc., 26 Ky. Law Rep., 181; Ky. Stats., secs. 542, 566, 551; Mason & Foard Co. v. Metcalfe Mfg. Co., 44 S. W., 629; American Wire Nail Co. v. Gege, 96 Ky., 521, 522; Morawetz on Private Corporations, 2d ed., secs. 337, 579; Litz et al. v. Hammon Goosling and wife, 21 L. R. A., 127; Page on Construction of Contracts, sec. 1112, vol. 2; vol. 3, sec. 1607; Pomeroy's Equity Jurisprudence, vol. 6, secs. 769, 757, 754; Welty v. Jacobs, 40 L. R. A., 98; Fry on Specific Performance of Contracts, 3 ed., secs. 440, 69; Page on Contracts, vol. 3, sec. 1633; Stanton v. Singleton, 47 L. R. A., 334; U. S. Stats.; High on Injunctions, 4th ed., vol. 2, sec. 1109a.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

This action was instituted in the Nelson circuit court for the specific performance of the following

contract, which, although long, we consider necessary to set forth in full:

"Samuels, Ky., Nov. 29, 1906.

"This writing witnesseth that W. B. Samuels & Co., Incorporated, of Nelson county, state of Kentucky, have this day employed and do hereby employ, constitute and authorize T. G. Gilmore & Co., Incorporated, of Louisville, Ky., to make a contract for and on its behalf, for the sale of its distillery property at Samuels Depot, in Nelson county, Kentucky, and twelve hundred and sixty-six barrels of whisky at a price of 30 cents per proof gallon, original guage, the purchaser to take and pay for same, not less than 200 barrels each and every two months from the date of sale, and the cost of carriage additional after the date of sale to be added to the price. To sell two thousand barrels to be manufactured at said distillery during each and every distillery season from this date, with an option to the purchaser to take, and require to be made for him, one thousand barrels additional each season if he requires, or any portion thereof, for a period of five years from this date, and the purchaser to have the privilege of renewing this contract and extending same for an additional period of five years, provided he gives notice of his intention to renew the contract on or before the 1st day of July next preceding the date of expiration of the first five-year period. The price of the said whisky to be hereafter manufactured to be twenty-five (25c) cents per proof gallon, based on corn at 45 cents per bushel in Louisville, as shown by bills for same, and in the event that the price of corn should advance, the price of the whisky to be increased one-quarter of a cent per gallon for each cent advance per bushel in corn above 45 cents, and if corn declines, the price of the

whisky to be reduced one-quarter of a cent per gallon for each cent decline in the price of corn below 45 cents.   The whisky manufactured hereafter to contain 30 per cent of small grain, and to be sound and merchantable.   If, during any season, the price of corn should exceed 75 cents, then no whisky is to be made except at the option of the purchaser, but the full amount shall be produced during the life of this contract in such amount each season as the distiller can produce, but not exceeding 3,000 barrels per season, except at distiller's option.   Cooperage to be first class, eight or ten-hoop barrels, and the distiller to deliver the whisky as required, f. o. b. cars at Samuels, Ky.   Outs to be guaranteed not to exceed one gallon per month.   Goods to be paid for on the 10th of each month succeeding the month of manufacture on delivery of warehouse receipts.   Buyer to have option of having a portion of each crop made in such name or names as he may designate other than W. B. Samuels & Co., and buyer is to have the brand of W. B. Samuels placed on any or all of the whisky made under this contract at his option.   Said W. B. Samuels & Co. is to establish and maintain a bottling room suitable for bottling in bond, suitable to meet the requirements of purchaser in bottling the whiskies of said distillery, and said bottling house must be established without delay, so as to take care of any orders buyer may give for the bottling of any whiskies now in the W. B. Samuels & Co. warehouses which buyer may purchase on the market.   Purchaser is to furnish, for bottling in bond at Samuels, Ky., all cases, bottles, corks, labels, etc., without cost of W. B. Samuels & Co., and W. B. Samuels & Co. is to furnish labor in bottling said goods, and charge for same as follows: 'Half pints, 60 cents per case; pints, 40 cents per

case; fives, 25 cents per case; fours, 25 cents per case.'

"Also to sell the distillery plant and lands containing about 14 acres, more or less, at Samuels Depot, in Nelson county, Kentucky, being all the lands owned by said W. B. Samuels & Co., together with the distillery warehouses and all other improvements, buildings, fixtures, and machinery thereon; also all brands, good will, etc., for a consideration of $25,000.00, excluding, however, accrued storage up to time of transfer of said property and personal property consisting of barrels, barrel material, grain, coal, etc. The purchaser of the whisky under any contract which may be made by said T. M. Gilmore & Co. to have the option to purchase said distillery at the end of the first five-year period, or if contract is extended for an addition five years, then the purchaser to have the option to purchase said distillery plant and premises at said price at the end of the second five-year period. Said W. B. Samuels & Co. agree to make a deed of general warranty to the purchaser except as to the lien in favor of the United States Government. Said W. B. Samuels & Co. agree to pay, in the event of this sale, to T. M. Gilmore & Co., a commission of fifty cents per barrel on each and every barrel of whisky taken by purchaser under this contract, said commission to be paid as goods are delivered and paid for, and in the event that the purchaser, in the exercise of his option, takes the distillery, it is to pay a commission to T. M. Gilmore & Co. of five (5%) per cent when deed is made and notes are given or cash paid. In case distillery is destroyed, W. B. Samuels & Co. is not to be required to fulfill this contract, but in the event it should rebuild the distillery, then it shall perform the contract with the successors or assigns of persons with whom same may be made.

This option limited to five days from date of this paper.

'(Signed)  W. B. Samuels & Co.,

By M. A. Samuels, Pres. 'T.' ' "

"We hereby agree to take the whisky mentioned in this writing at the prices and on the terms and conditions, and with the options contained therein, including the option to purchase the distillery plant and lands mentioned.

"(Signed)  R. H. Edelen & Co.

"Bardstown, Ky., Nov. 29, 1906."

"This writing, made on this the 30th day of November, 1906, by and between T. M. Gilmore & Co., Incorporated, as agent of W. B. Samuels & Co., Incorporated, of Nelson county, Kentucky, of the first part. and R. H. Edelen & Co., that is, R. H. Edelen and John S. Kelley (partnership), of the second part, witnesseth: That the said T. M. Gilmore & Co., as agent aforesaid, has, in pursuance to the power and authority vested in it by writing, signed by W. B. Samuels & Co., of date November 29, 1906, and accepted by R. H. Edelen & Co., in writing at the foot thereof and signed by R. H. Edelen & Co., and which is hereto attached and made part hereof, marked 'W. B. S. Co.,' sold to said R. H. Edelen & Co. all the whisky mentioned in said writing, including the product of said distillery for five years from this date, and authorized to be sold by said writing of date November 29, 1906, marked 'W. B. S. & Co.,' on the terms and conditions and stipulations therein, with all the privileges and options mentioned in said writings, including the option and privilege to said second parties to extend the contract for the purchase of the product of said distillery for an additional period of five years upon the same terms and conditions and

with the privileges and options to said second parties to purchase the said distillery property at the prices and on the terms and conditions mentioned in said writing, either at the end of the first five-year period, or at the end of ten years from this date, and said R. H. Edelen & Co. hereby agree and accept said whisky and pay for the same on the terms and conditions and with all the rights and privileges and options in said writing mentioned as fully as if set out herein at length, and agree to do and perform all the obligations and acts imposed upon them as purchasers thereof under said writing of November 29, 1906. Witness our hand the day and year first above written.

"(Signed) T. M. Gilmore & Co.,
"R. H. Edelen & Co.,
"By John S. Kelley."

To the petition, which sought a decree enforcing a specific performance of the foregoing contract, a general demurrer was interposed and sustained. The plaintiffs declining to amend, the petition was dismissed, and they are here on appeal.

It may be assumed that there are no questions of technicality of pleading involved, and that the contract sued on, which is made a part of the petition, is a valid and subsisting contract between the parties. The question raised by the demurrer is whether or not the chancellor should adjudge a specific performance of its terms. It will be observed that the contract involved here, if specifically enforced by the chancellor, will require the court's constant attention for a period of at least five years, and at the option of the appellants, ten years. In order to make the whisky contemplated by the terms of the instrument before us, the court will be forced to purchase a large

quantity of grain and other material necessary to the distillation of the spirits to be delivered; also to erect a bottling works, and be prepared to bottle the whisky after it is made. There is no fundamental distinction between contracts involving realty and those involving personal property, in so far as the remedy of specific performance is concerned. The right to a decree of specific performance of a contract is based upon the equitable principle that the ordinary common-law remedy of damages for a breach will not afford a full and adequate remedy for the injury arising from the failure to carry out its terms. It is true that generally mere damages will more uniformly be found to fail as an adequate remedy in contracts relating to realty than those relating to personalty; yet, where the specific enforcement of a contract concerning personalty is practicable, and the remedy sounding in damages is found to be inadequate, the chancellor will just as readily enter a decree for its specific performance as he will in a contract concerning real property. And, while the remedy of specific performance is generally spoken of as resting in the discretion or grace of the chancellor, this is more a form of expression than of accurate definition of the rights of the injured party as to his remedy by specific performance. In other words, while the chancellor has a discretion, it is not an arbitrary, but a legal discretion. Holding these principles in mind, we will now examine some of the authorities relating to the subject in hand.

Pomeroy, in his work of Specific Performance of Contracts, in enumerating the class of cases where a specific performance will be denied because it is impracticable, says:

"Sec. 307. Contracts having such terms and pro-

visions that the court is unable to carry into effect its
decree for a specific performance. In this class of
agreements, which is by far the most numerous and
important, the jurisdiction is declined, not because it
is impossible to formulate a decree which shall order
everything necessary for a complete performance,
nor even because a compulsory execution of such
decree is absolutely and in the nature of things impos-
sible, but because the enforcement of the decree
would unreasonably tax the time, attention, and
resources of the court, and thereby interfere too much
with its public duties towards other suitors, and in the
general administration of justice. Take the case,
which is the extreme one, of a contract for the con-
struction of an extensive line of railway. It is plain
that a court of equity can render and put into a
proper form a decree ordering the specific execution
of this contract with about the same ease that it can
make a decree ordering the execution and delivery of
a deed of conveyance with the requisite covenants and
other provisions. It is also plain that by means of a
comprehensive and minute scheme of operations pre-
pared by experts, and by the help of special masters
overseeing the work and reporting its progress from
time to time, the court might enforce this decree,
although months, or even years, should be required
for its completion; but to do so would occupy the
care, attention, and time of the court, to the exclusion
of other matters, and to the manifest detriment of the
public business. A judicial tribunal cannot thus sac-
rifice the interests of other suitors, and even of
society, for any benefit which might accrue to indi-
vidual parties. For this reason, rather than from any
inherent and absolute impossibility, equity refuses to
exercise its jurisdiction under such circumstances. In

some cases, however, of special and exceptional con-
tracts properly belonging to this class, where the
inconvenience would be comparatively slight, and
where its interference is demanded by well-settled
principles, equity does exercise its jurisdiction and
decree a specific performance. The followng are the
important species of agreement in respect of which
the remedy is generally declared to be impracticable:

"Sec. 308. A continuing covenant will not be nega-
tively enforced by an injunction restraining its
breach, when the acts alleged to be in violation of it
are numerous, and each one of them would require
a separate judicial examination—perhaps an action
at law—in order to ascertain whether it constituted a
breach or not, and where the same controversy would
arise with respect to every violation of the injunction,
as, for example, a covenant not to sell water from a
certain well to the plaintiffs injury. In such a case
each alleged breach would require a separate contro-
versy of fact. An injunction, in the very terms of the
covenant restraining 'sales to the injury of the
plaintiff,' would not remove the difficulty, because the
same question would arise upon every breach of it,
viz., whether the plaintiff was in fact injured, and an
injunction restraining all sales would be broader than
the covenant. The same obstacles would arise in the
way of negatively enforcing every other covenant or
agreement of the kind described."

"Sec. 310. The instances embraced in the two fore-
going subdivisions are rare. Those which follow are
of constant occurrence. Contracts for personal serv-
ices, where the acts stipulated for require special
knowledge, skill, ability, experience, or the exercise
of judgment, discretion, integrity, and the like per-
sonal qualities on the part of the employes, or where

vol. 126—20

the services are confidential, in short, wherever the full performance, according to the spirit of the agreement, rests in the individual will of the contracting party, courts of equity have no direct and efficient means of affirmatively compelling a specific execution. At most, they could only order the acts to be done and punish the defendant refusing by fine or imprisonment.''

The case of Marble Company v. Ripley, 10 Wall (U. S.) 339, 19 L. Ed. 955, involved the specific performance of a contract with reference to the quarrying of marble, and the court thus laid down the rule in regard to the specific performance of a contract somewhat similar in principle to that we have here: ''Another serious objection to a decree for a specific performance is found in the peculiar character of the contract itself, and in the duties it requires of the owners of the quarries. These duties are continuous. They involve skill, personal labor, and cultivated judgment. It is, in effect, a personal contract to deliver marble of certain kinds, and in blocks of a kind, that the court is incapable of determining whether they accord with the contract or not. The agreement being for a perpetual supply of marble, no decree the court can make will end the controversy. If performance be decreed, the case must remain in court forever, and the court to the end of time may be called upon to determine, not only whether the prescribed quality of marble has been delivered, but whether every block was from the right place, whether it was sound, whether it was of suitable size, or shape, or proportion. Meanwhile the parties may be constantly changing. The marble company are liable so long as they hold the land, and Ripley's rights exist only while he holds the mill. It is manifest that

the court cannot superintend the execution of such a decree. It is quite impracticable. And it is certain that equity will not interfere to enforce part of a contract, unless that part is clearly severable from the remainder." To the same effect are the cases of Port Clinton Railroad Company v. Cleveland & Toledo Railroad Company, 13 Ohio St. 544; Beck v. Allison, 56 N. Y. 366, 15 Am. Rep. 430, and Bomer Bros. v. Canaday, 79 Miss. 222, 30 South. 638, 55 L. R. A. 328, 89 Am. St. Rep. 593. In 26 Am. & Eng. Encyc. of Law (2d Ed.) p. 102, it is said: "The general rule is that equity will refuse to decree specific performance of a contract for personal services involving the exercise of skill, judgment, taste, or discretion, particularly if the terms of the contract or the nature of the services to be rendered are vague and uncertain, or if the contract is to continue through a considerable period of time, and would require the constant supervisions of the court."

It may be conceded that the broad rule we have laid down has been somewhat narrowed in favor of the specific performance of contracts relating to the operation of quasi public corporations, such as steam railroads and street railways. Of these last the case of Schmidtz, etc., v. Louisville & Nashville Railroad Co., 101 Ky. 441, 19 Ky. L. R. 606, 41 S. W. 1015, is a fair example. But we conceive that the rule established by the authorities hereinbefore cited has not been modified further than in those cases wherein the general public has an interest; and certainly the rule has not been modified so as to embrace within the class of those contracts which will be specifically enforced such an one as that before us. It seems to us if there is any contract which will not be specifically enforced because of the impracticability or difficulty in framing a decree

therefor, such a one we now have under consideration. At the very outset, if the court undertook, through its commissioner, to carry it into effect, it would be obliged, as said before, to raise a large sum of money for the purchase of material and the construction of a bottling establishment. As the court would have no money, of its own, this would necessarily have to be borrowed from the banks or other money-lenders, notes would have to be executed, and their payment or renewal arranged for, great skill would have to be exercised in purchasing, setting up, and operating the machinery required to carry into effect the covenant relative to the bottling establishment, great commercial foresight and acumen would be involved in the purchase of grain and other material necessary to carry out the contract; and then the distillation of the liquor would require a technical skill and knowledge which the court, not possessing, would have to employ. Many nice and intricate questions would arise as to whether or not the whisky distilled was or not made in accordance with the terms of the contract; and at every stage of the procedure difficulties would be encountered which, as between individuals, might result in lawsuits. Suppose the plaintiffs should claim that the whisky manufactured by the court was not up to the contract standard, or that the barrels furnished by it leaked to a greater extent than allowed by the outage covenanted in the contract. How would these various questions be settled? Then, too, in the distillation of whisky, the court and its officers would necessarily, to a large extent, be in the hands of the federal revenue officers, who would take charge of the liquor and control it, to the exclusion of the court and its officers, and a mere technical violation of the United States revenue laws, or even a

claim of such violation, might result in the court and its officers being prosecuted under the criminal laws of the United States relating to the distillation of spirituous liquor. Nor is it a strained supposition that the chancellor might have scruples as to being engaged in the distillery business under any circumstances. But it is not necessary to seek further for examples of the many difficulties, not to say impossibilities, lying in the path of a specific performance on the part of the court of the contract in question. It seems to us they are insurmountable.

Nor can the contract be enforced by the process of fine against the recalcitrant defendant. It would be impossible for the court to know, or to ascertain certainly, whether or not it was in default if there was a complaint of a failure on its part to live up to the contract in its true meaning or intent. The chancellor has no special knowledge by which he could say whether or not the whisky was properly distilled, or whether proper proportions of the different grains were used, or whether the bottling was in accordance with the contract, or the barrels sufficiently secure to keep within the outage clause.

On the other hand, it does not seem to us that the plaintiffs have not an adequate remedy in a suit at law for a breach of the contract. There may be some difficulty in producing the evidence to enable a jury to award the proper amount of damages; but this can be overcome by diligence and care, and certainly it cannot be said that it is impossible to ascertain the real amount of damages which the plaintiffs may sustain by reason of the alleged breach of the contract. But, be this as it may, it will better subserve the ends of justice that the plaintiffs should endure the difficulty of proving to a jury the extent of their injury in

an action at law, than that the court should be drawn into the financial hazard of operating a large distilling plant for a long period of time, and be constantly confronted with intricate and difficult problems of expediency in successfully maintaining its venture, not to speak of having its time and attention almost entirely monopolized by the problems arising in one case, to the exclusion of the interests of the various other litigants with cases pending in the court.

For these reasons, we are constrained to the conclusion that the trial judge correctly sustained the general demurrer to the petition, and his judgment is therefore affirmed.