ST. JUDE MEDICAL, INC., Plaintiff,

v.

INTERMEDICS, INC. and CarboMedics, Inc., Defendants.

CARBOMEDICS, INC., Plaintiff,

v.

ST. JUDE MEDICAL, INC. and Sorin Biomedica, S.P.A., Defendants.

CARBOMEDICS, INC., Plaintiff,

v.

ST. JUDE MEDICAL, INC., Defendant.

Civ. Nos. 4–84–267, 4–84–529 and 4–84–643.

United States District Court, D. Minnesota, Fourth Division.

Oct. 10, 1984.

See also D.C., 623 F.Supp. 1294.

R. Walter Bachman and Richard Ostlund, Lindquist & Vennum, Minneapolis, Minn., for plaintiffs.

Edmund McCabe and Sydelle Pittas, McCabe & Gordon, Boston, Mass., Paula D. Osborn, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

These companion cases arise from a manufacturing relationship involving St. Jude Medical, Inc. (St. Jude), Intermedics, Inc. (Intermedics), and CarboMedics, Inc. (CarboMedics). In the first of three cases filed, Civil No. 4–84–267, St. Jude alleges breach

of contract, breach of confidential duty, and misappropriation of trade secrets by CarboMedics and Intermedics.[1] In Civil No. 4–84–529, CarboMedics alleges that St. Jude breached its fiduciary duty to CarboMedics and confidentiality provisions of a supply contract, that St. Jude misappropriated trade secrets, and that St. Jude and Sorin Biomedica, S.P.A., an Italian corporation which manufactures pyrolytic carbon-coated devices, have conspired wrongfully to exploit these trade secrets at CarboMedics' expense. CarboMedics also charges in Civil No. 4–84–643 patent infringement by St. Jude and seeks a declaratory judgment that it is not violating a St. Jude patent. St. Jude counterclaimed, alleging invalidity of CarboMedics' patents infringements. Jurisdiction in each case is founded on diversity of citizenship.

These matters are presently before the court upon St. Jude's motion for preliminary injunctive relief. St. Jude wants the court to order CarboMedics to manufacture and deliver heart valve components pursuant to a January 1, 1983 supply contract and appointment of a special master to monitor this relationship.

## BACKGROUND

The relevant facts appear to be as follows. St. Jude, a Minnesota corporation, is in the business of assembling, testing, and marketing mechanical heart valves of various sizes, technically known as "bi-leaflet pyrolytic carbon coated prosthetic heart valves." CarboMedics, a Texas corporation, is in the business of selling pyrolytic carbon for medical applications. CarboMedics has processed the pyrolytic carbon for heart valves assembled and marketed by St. Jude since 1977. Intermedics, a Texas corporation, is the parent corporation of CarboMedics.

CarboMedics is the successor in interest to the former Medical Products Division of General Atomic Company, a California corporation, and the assignee or licensee of its intellectual property. The division was acquired by Intermedics, renamed CarboMedics, and became a subsidiary of Intermedics.

With the aid of CarboMedics, St. Jude developed its carbon coated prosthetic heart valve in approximately 1977. St. Jude and CarboMedics worked together to develop the necessary manufacturing process. St. Jude has sold its valve in international markets since 1978. The United States Food and Drug Administration (FDA) approved St. Jude's valve for general marketing throughout the United States on December 17, 1982. St. Jude's valve is well accepted in the medical community and has attained significant market penetration both in the United States and foreign countries.[2]

CarboMedics has fabricated components for heart valves marketed by St. Jude pursuant to a series of written supply contracts which began in 1980. CarboMedics is apparently the only manufacturer capable of manufacturing carbon coated mechanical heart valve components. To alleviate its customers' concerns about their sole reliance on CarboMedics, CarboMedics included in its standard contract form provisions limiting its bargaining power. These provisions appeared in the 1980, 1981, and 1982 supply agreements between CarboMedics and St. Jude, and they are critical to the parties' dispute under the January 1, 1983 supply agreement.[3]

St. Jude bases its breach of contract claims on paragraphs 10.1, 11.0 and 15.0 of the 1983 supply contract. Paragraph 10.1 governs termination and provides that the "obligation of Manufacturer [CarboMedics]

---

1. The parties have subsequently stipulated that St. Jude may file an amended complaint which charges violations of the Sherman and Clayton Acts, misappropriation of trade secrets by illegal means, conversion, and unfair competition.

2. St. Jude Medical estimates that at least 28% of all prosthetic heart valves sold in the U.S. in 1983 were the St. Jude Medical bi-leaflet heart valve. During the same year in Western Europe, 42% of all prosthetic valves implanted were the St. Jude Medical bi-leaflet heart valve.

3. Pursuant to this 1983 supply agreement, CarboMedics was to deliver to St. Jude 24,100 heart valve component sets.

under this agreement may not be terminated unilaterally" by CarboMedics until such time as CarboMedics has:

1) informed St. Jude of CarboMedic's intent to terminate:

2) determined from St. Jude an approximation of the length of time St. Jude will require to develop an alternative source; and

3) supplied to St. Jude heart valve components in sufficient quantities to meet St. Jude's requirements for the time St. Jude estimates will be necessary to develop an alternative source.

Paragraph 11.0 contains limitations on CarboMedics due to its position as sole manufacturer of carbon components,[4] and paragraph 15.0 provides that the remedy for breach of the terms of the agreement, including allegations of patent infringement, is to initiate a lawsuit.

St. Jude alleges that CarboMedics breached the 1983 agreement by refusing to deliver approximately 3,900 heart valve sets promised to be delivered in 1983. In addition, St. Jude maintains that CarboMedics has a duty, pursuant to Paragraph 10.1, to supply components to St. Jude until St. Jude can find an alternative source. St. Jude contends that the intention of the parties to preserve the supply of components until any disputes could be resolved is further illustrated by paragraph 15.0.[5]

By contrast, CarboMedics alleges that the provisions of the 1983 supply agreement are not enforceable. CarboMedics contends that St. Jude fraudulently induced CarboMedics to enter into that agreement by deliberately concealing a plan to produce its own carbon coated heart valve components. And even if the provisions were enforceable, CarboMedics asserts that it has fully complied with the terms of the agreement by performance of a May 1984 interim supply agreement. It also points to St. Jude's public assertion that it has enough components to last until an alternative source would be available. Finally, CarboMedics maintains that it was justified in terminating the 1983 agreement because St. Jude had breached the contract by misappropriating CarboMedics's trade secrets. CarboMedics states that it demanded assurances of due performance of the confidentiality portions of the contract under Minn. Stat. § 336.2–609 and was therefore free to terminate under Minn.Stat. § 336.2–609(4) when St. Jude did not comply.

St. Jude brought an action for similar injunctive relief in March 1984, but withdrew its motion at that time because the parties signed an interim supply agreement on May 2, 1984. Pursuant to this agreement, CarboMedics agreed to supply St. Jude with 5,307 heart component sets.[6]

---

**4.** Paragraph 11.0 provides in its entirety: Sole Source Limitation. Manufacturer hereby recognizes that, as a practical matter, it is currently the sole manufacturing source available to Buyer for the manufacture of coated mechanical heart valve components utilizing pyrolytic carbon as an essential manufacturing component. In view of this, Manufacturer hereby agrees not to utilize this position as unfair or unreasonable leverage in future negotiations with Buyer considering price and/or quantity of coated mechanical heart valve components to be manufactured and delivered, and further agrees not to discriminate against Buyer in comparison with other customers or manufacturers who purchase from Manufacturer various medical components manufactured by Manufacturer utilizing pyrolytic carbon.

**5.** In its amended complaint, plaintiff charges that CarboMedics has discriminated against it, in violation of paragraph 11.0, by offering favorable prices to Hemex Scientific, Inc. (Hemex), a Texas corporation which presently manufactures a bileaflet all carbon heart valve for sale outside the United States. St. Jude also alleges that CarboMedics has provided Hemex with secret and proprietary information regarding the design and methods of successful marketing of St. Jude's products; that principal officers, directors and employees of Intermedics and CarboMedics are shareholders in and are otherwise personally interested in Hemex; and that defendants' actions constitute misappropriation of St. Jude's trade secrets and a breach of the confidentiality provisions of the supply contract.

**6.** The interim supply agreement contained the following clause: "[St. Jude] acknowledges that [CarboMedics'] agreement to supply [St. Jude] with these [CarboMedics] components completely satisfies [CarboMedics'] obligations to deliver, during calendar year 1983, [CarboMedics] components under the 1983 supply agreement."

St. Jude contacted CarboMedics requesting discussions to negotiate a further interim supply agreement, but CarboMedics rejected that proposal. St. Jude then brought this motion for injunctive relief.

DISCUSSION

Whether preliminary injunctive relief should be granted depends upon the showing made on the following factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Systems v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981).

The affidavits submitted by St. Jude indicate that the continued supply of carbon coated heart valve components is essential to the operation of its business. The affidavits state that St. Jude is in essence a one product company, relying almost totally on the sale of its bi-leaflet mechanical heart valves.[7] If CarboMedics does not reinstitute component delivery, St. Jude calculates that it will be unable to supply four valve sizes as soon as January 1985. Inventory in all sizes could be exhausted by February or March 1985. Such a supply disruption, St. Jude maintains, would have a disastrous impact upon market confidence and the financial stability of the publicly traded company.

CarboMedics, on the other hand, contends that St. Jude has failed to demonstrate that an immediate threat of harm actually exists. CarboMedics claims that there is no proof detailing when sales representatives of hospitals will exhaust their inventories of St. Jude valves and that St. Jude has projected that it will be able to meet demand by producing 600 valves per week by December 1984.

Yet other submitted materials, including statements in CarboMedics' appendix,[8] demonstrate that St. Jude faces a serious shortage of heart valve components, and may thus be unable to supply necessary heart valves. St. Jude's affidavits indicate that most hospitals and sales representatives maintain only a limited inventory of valves and could provide valves to patients for only two weeks after St. Jude ceased delivery of other heart valves. In addition, St. Jude's vice president has testified that St. Jude's ability to produce its own heart valve components depends on FDA approval, which is not expected until the last half of 1985 at best. Without the continued supply of CarboMedics' components while this dispute is resolved, St. Jude's business would be placed in jeopardy.

CarboMedics maintains, however, that it would suffer greater harm from the granting of the injunction than would St. Jude if the injunction were denied. Robert Akin, CarboMedics' Vice President of Operations, estimated in his affidavit that to provide heart valve components to St. Jude without disrupting supplies to its other customers, CarboMedics would need to spend nearly $1,000,000 to purchase new tools and to hire and train additional personnel. Akin affidavit, CarboMedics' appendix, pp. 61–65. CarbonMedics cautions that issuance of such wide ranging injunctive relief would necessarily involve the court in ongoing supervision of complicated business matters, including sensitive issues of business judgment and engineering skill. In addition, CarboMedics has expressed concern that the "interim relief" requested by St. Jude may turn into a long range supply

---

7. According to the affidavit of John Jungbauer, Vice President of Finance at St. Jude, St. Jude will begin selling a vascular graft this fall, but sales in 1985 are projected to total only 2 percent of the projected mechanical heart valve sales. Although St. Jude has funded research and development projects in an attempt to diversify, the company does not expect any of these products to produce significant revenue in 1985. Jungbauer affidavit, p. 2.

8. CarboMedics argued against interim relief in its appendix by stating that there is a "very real possibility that [St. Jude] will never be capable of coating its own components. The following testimony [of John Wang of St. Jude] demonstrates that [St. Jude's] carefully conceived carbon project plan has not proceeded, and probably will not proceed, according to any schedule." (CarboMedics' appendix, pp. 76–82).

obligation on CarboMedics' part if St. Jude does not develop an alternative source in the near future.

St. Jude, as to be expected, weighs the balance of hardships differently. Although St. Jude believes that CarboMedics' estimate of necessary expenditures is inflated, counsel for St. Jude stated at the hearing that it is willing to post a $1,000,000 bond to protect CarboMedics. Moreover, St. Jude would of course pay for all components received.

St. Jude's proposed bond forestalls much of the harm anticipated by CarboMedics should an injunction issue. CarboMedics has not demonstrated why it would not be protected by a million dollar bond. Moreover, CarboMedics' fear that it will be supplying St. Jude component parts pursuant to court order for years to come is unwarranted. Currently, this matter is to be ready for trial on the merits by April 1, 1985. In addition, although courts are hesitant to force recalcitrant parties into business ventures, this case is readily distinguishable from *Edelen v. W.B. Samuels & Co.*, 126 Ky. 295, 103 S.W. 360 (1907) cited by the defendants in their letter brief. CarboMedics is not being ordered to *begin* the business of producing heart valve components. CarboMedics will make heart valve components whether or not it is ordered to deliver part of these valves to St. Jude while this dispute is being resolved. Moreover, these parties have dealt with each other for approximately seven years. Only recently, in response to the disputes now being litigated, did CarboMedics cease to supply St. Jude. The contemplated injunction would be only temporary while the court is resolving the parties' complex allegations.

■ At this stage in the proceedings, it is difficult to determine whether St. Jude will prevail on the merits. Both sides have devoted many pages to discussion of the merits of these charges and countercharges, but resolution of the claims depends on

further development. The record demonstrates, however, that St. Jude has raised substantial issues which call for more detailed exploration.[9]

■ St. Jude's affidavits indicate that the public interest would be best served by issuance of preliminary injunctive relief. St. Jude has submitted numerous excerpts from medical studies which endorse the St. Jude valve and demonstrate the confidence placed in the product by the medical community. Dr. Thomas Kersten notes in his affidavit that the St. Jude valve has several specific advantages not found in other prosthetic valves which make it the "valve of choice for implantation in infants and children...." Kersten affidavit, p. 2. Dr. Kersten asserts that if the supply of these valves is interrupted, surgeons and their patients may be forced to use a less satisfactory heart valve or to undergo additional surgical procedures. *Id.*

While CarboMedics does not dispute that St. Jude markets a widely-respected mechanical heart valve, it contends that no public interest would be served by the injunction as there is no threatened shortage of heart valves. CarboMedics submitted the affidavits of officers of four competing producers of mechanical and tissue heart valves, all of whom attested to the ability of their companies to fill any gap left by a possible shortage of St. Jude heart valves. CarboMedics did not submit any medical authority, however, to respond to St. Jude's medical testimony that there is no medically comparable valve. The record shows that the public interest, as reflected by the needs of the medical community and its patients, would be best protected by the issuance of a preliminary injunction.

In sum, the court finds that a preliminary injunction should issue pending resolution of the parties' extensive allegations. The request for a special master is another matter, however. St. Jude has made no showing that such an appointment would

---

9. CarboMedics has charged that St. Jude comes before this court with unclean hands and should therefore be denied injunctive relief. Determi- nation of whether the conduct is unconsciona- ble must await a trial on the merits.

be provident or necessary at this time, and the cases cited in its letter brief are not persuasive.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that:

1. The motion of St. Jude Medical, Inc. for a preliminary injunction is granted, and CarboMedics, Inc. is ordered immediately to begin to manufacture and deliver carbon coated heart valve components to St. Jude Medical, Inc. pursuant to the schedule and specifications stated in the purchase orders submitted by St. Jude Medical, Inc. to CarboMedics, Inc. on August 8, 1984. (Exhibit C to St. Jude's memorandum in support of its motion for a preliminary injunction.)

2. The preliminary injunction granted St. Jude Medical, Inc. shall become effective upon its filing of a bond in the amount of $1,000,000, and will remain in effect until further order of this court.

3. St. Jude Medical, Inc.'s request for appointment of a special master is denied.

See also D.C., 623 F.Supp. 1289.