## Riley et al. v. Cumberland & Manchseter Railway Company.

(Decided June 10, 1930.)

H. H. OWENS and WM. LEWIS & SON for appellant.

KENNETH TUGGLE, J. D. TUGGLE and THOS. D. TINSLEY for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Appellants were partners in the timber business. They purchased a boundary of timber and entered into

a contract with appellee to construct a side track to enable them to market their timber. For some reason or another appellee failed to construct the track in accordance with its agreement after appellants had fully complied with their part of the contract. They instituted a suit in the Clay circuit court asking for a specific performance of the contract which was granted, and appellee immediately proceeded with the completion of its part of the contract. It appears that the first contract made in April or May, 1920, was not reduced to writing, but, after the chancellor had directed appellee to perform the contract, there was a written agreement in regard to the matter. This written agreement was made on the 20th day of July, 1920. That contract covers the same subject-matter as did the verbal contract, but we deem that matter immaterial in view of the conclusions which we have reached.

On the 28th day of April, 1925, suit was instituted to recover damages from appellee on the ground that the delay occasioned by its refusal to complete its contract resulted in the inability of appellants to ship certain timber products until the market had gone off which caused them to lose more than $10,000. The issues were made up, and, at the conclusion of the evidence introduced to enable the court to determine whether the contract sued on was the same contract involved in the suit for specific performance, the court found it to be a suit on the same contract and instructed the jury to return a verdict in favor of appellee.

Counsel for appellants devote their argument to but one question, and that is whether the doctrine of res judicata can be made to apply. It is their contention that the first suit for a specific performance is not a bar to the second suit for damages. Counsel for appellee devote their entire argument to the question of the right of a party to institute a suit to recover damages for the breach of a contract after having elected to pursue his remedy for a specific performance and having obtained the relief sought.

Counsel for appellants thus state the question before us:

"Does an equitable action which sought to compel a railroad company to install a side track in order

that timber taken from his boundary of land may be changed from that side track to the markets, bar a subsequent action at law which is brought to recover damages which result in the loss sustained by the dropping-lumber-markets before that timber could, after the switch was installed, be gotten to the market?''

On the other hand, counsel for appellee thus state the question before us:

''It is the contention of appellee that appellants, Riley and Cole, by filing the suit in the Clay Circuit Court seeking a specific performance of the alleged contract, made an election between the remedies that they might obtain for the breach of the contract, which barred their right to assert any subsequent claim for damages.''

From the respective contentions we deduce that the question for decision is whether a party may seek and obtain specific performance of a contract and thereafter institute action to recover damages occasioned by the delay in compelling specific performance.

Neither brief cites any Kentucky case directly in point. In response to the brief filed in behalf of appellee, counsel for appellants treat their contention as one deserving no consideration or courtesy, but they fail to cite any case justifying the position taken. It is suggested by them that counsel for appellee undertake to apply trite undisputed principles of law to facts for which they are not intended. It is conceded by counsel for appellants that if they stood at the threshold, and there had two roads, and chose the one that a court would not permit them, after following that course, to come back and take up the other one. By a further process of reduction, and in determining what the contention really is between the parties, we find that the case reduces itself to whether appellants, when they stood at the threshold, had two roads, either of which they might follow, as they, by their own counsel, concede if that is true that they cannot now go back and follow the other road after having pursued one to the end. The election of remedies is the act of choosing between different inconsistent coexisting remedies. It is the choice by a party to an action of one of two or more coexisting remedial rights, where several such rights arise out of the

same facts. But generally the doctrine applies to a choice by a party between inconsistent remedial rights, the assertion of one being necessarily a repudiation of the other. The doctrine is based upon the rule that a party cannot, either in the course of litigation or in dealings in pais, occupy inconsistent positions. As has been said in some cases, a man shall not be allowed to approbate and reprobate. 20 C. J. page 1 et seq. contains many definitions and illustrations relating to the doctrine of election of remedies taken from many cases.

In the case of O'Donnell v. McCool, 89 Wash., 537, 154 P. 1090, the court announced that the election of remedies is the act of choosing between different remedies allowed by law on the same state of facts, or where the party has but one cause of action, one right infringed, or one wrong redressed.

The statement was there made that the doctrine of election of remedies applies to cases only where the plaintiff has a choice of remedies arising out of the same state of facts; a familiar example of which, so said that court, is a breach of contract to perform some specific undertaking where the party injured may choose between the remedy of damages and the remedy of specific performance.

In Perry v. Shumway, 73 Vt. 191, 50 A. 1069, the court said:

"The basal idea of that law being that a man shall not be permitted to insist at different times upon the truth of each of two inconsistent claims or positions, according to the promptings of his private interest,—as to affirm and to disaffirm a contract, and the like."

In the case of Phillips v. Rooker, 134 Tenn. 157, 184 S. W. 12, 13, it was said:

"Election of remedies may be defined to be the adoption, by an unequivocal act, of one of two existing alternative remedial rights, inconsistent and not reconcilable with each other, the effect of which is to preclude a resort by the plaintiff or creditor to the other."

These general statements are but the law as found in all jurisdictions. 20 C. J. page 6, carries the gist of the opinions into this text:

"When circumstances arise which give one a right to sue for breach of contract, or for specific performance, he cannot do both and should be put to his election. However, there is authority to the contrary."

Otto v. Young, 227 Mo. 193, 127 S. W. 9, is cited in support of the majority rule, but the case of Balleisen v. Schiff, 121 App. Div. 285, 105 N. Y. S. 692, is cited as supporting the minority rule. In the last-mentioned case it was pointed out that the action for a specific performance and the action for damages were both based on the contract and the defendant's default, and, therefore, they were not inconsistent.

In the case of Zutterling et al. v. Drake, 10 Ohio Cir. Ct. (N. S.) 167, 30 Ohio C. C. 561, the court in stating the question before it said that under the contract set up the plaintiffs originally had two remedies for the enforcement of their rights against the defendant. One was an action on the contract for specific performance; the other was a suit at law for damages for breach of the contract. It was held that having elected to pursue the remedy of specific performance it was too late thereafter to institute a suit for damages. The court based the opinion on 7 Encl. Pleading & Practice, page 364. The opinion in the above case was cited with approval in the case of Lee et al. v. Thoma, 17 Ohio (N. S.) 144, 1 Ohio App. 384. Appellee cites the case of Belding et al. v. Whittington et al., 154 Ark. 561, 243 S. W. 808, 26 A. L. R. 107. The opinion supports the position taken by counsel for appellee.

It is the general rule that as between actions for damages for breach of a contract and suits for specific performance that the mere beginning of the action, or suit, does not constitute an irrevocable election unless it has caused an advantage to the plaintiff or a detriment to the defendant. Connihan v. Thompson, 111 Mass. 270; Marcus v. National Council Knights and Ladies of Security, 127 Minn. 196, 149 N. W. 197; McMahan v. McMahon, 122 S. C. 336, 115 S. E. 293, 26 A. L. R. 1295; Stone v. Kaufman, 88 W. Va. 588, 107 S. E. 295.

But the general rule, although there are many exceptions to it, need not be considered by us because appel-

lants not only commenced their action for specific performance, but they prosecuted it to final conclusion and obtained fully all the relief sought.

It is said by counsel that there is no case, or cases, in Kentucky directly in point. The case, however, of Roberts v. Moss, 127 Ky. 657, 106 S. W. 297, 32 Ky. Law Rep. 525, 17 L. R. A. (N. S.) 280, recognizes and adopts the general rules governing in the election of remedies. It was there held that one who, instead of suing for a trespass on land in the circuit court where the land is located, sued for the value of the timber cut and appropriated in a court which did not have jurisdiction of the trespass, was bound by his election.

The case of Seamour v. Harlan's Heirs and Hart, 33 Ky. (3 Dana) 410, appears to shed light on the controversy herein involved. The facts upon which the opinion in that case was based showed that James Harlan sold and executed his bond to convey a tract of land to Thomas Huff. Huff afterwards contracted to sell the land to Seamour and executed his bond for a title, and Seamour executed six notes to him for the house. Huff assigned four of the notes to Hart and the other two to Harlan. Thereafter Huff assigned his bond for title on Harlan to Huff, whereupon Seamour delivered up to Huff the bond which Huff had executed to him and took up the notes which he had assigned to Hart, and executed his notes in lieu thereof directly to Hart. Seamour attempted to obtain a title, and, failing, he brought suit against Hart on his bond and recovered judgment at law for $770, and Hart recovered judgment against Harlan's executors on the bond assigned to him by Huff for $730. Soon after Seamour recovered judgment at law against Hart he abandoned possession of his land. Hart then filed his bill against Seamour and the heirs and representatives of Harlan seeking to enjoin the judgment recovered by Seamour against him, and praying that he might be compelled to accept a title from the heirs of Harlan which they were willing and able to convey in lieu of his judgment. Seamour answered resisting a specific performance of the contract and insisted on the validity of his judgments. Seamour then sought to enjoin the collection of the judgments recovered against him on the notes and prayed for a cancellation of the contract.

The court, in an effort to untangle the much involved facts, said:

"The case has been involved in much difficulty, by the election which Seamour has made, of his legal, instead of his equitable remedy, upon his title bond. Had not judgment at law been recovered in his favor against Hart, his remedy would have been easy, and ample justice could have been afforded him by the chancellor. But by his recovery of damages, at law, for a breach of the covenant to convey, he has so far affirmed the contract, and sought his remedy upon it, as to present the question, whether he shall now be permitted to abandon the judgment which he has recovered, or waive the election which he has made, and ask a court of equity for a rescission of the contract, and a surrender of the note for the consideration. We think he cannot. We recognize no principle of equity, which will authorize a chancellor to control the election which a purchaser has made of his remedies, after judgment or decree. By his election must he abide. Had he resorted to his remedy in chancery, and asked a specific execution, or rescission, of the contract, and obtained a decree for the one or the other, his bond would have been merged in the decree, and he could not afterwards have maintained an action of covenant at law thereon.

"So also, if he had sued at law, and recovered judgment thereon, he cannot, as we conceive, afterwards ask for a specific execution or rescission of the contract. He is estopped by the election which he has made, from asking other remedies upon his contract for a title, which is merged in the judgment which he has obtained."

That opinion appears to be in harmony with the weight of authority in other jurisdictions, as the rule in other jurisdictions is gathered from the text-writers and the opinions which we have examined. Such a rule is but the application of the old adage that a man cannot both have his cake and eat it. Appellants had a contract with appellee whereby appellee had agreed to do certain specific things and it had refused to carry out its contract. They had two coextensive remedies, the one inconsistent with the other. They could have their con-

tract executed by a suit for specific performance, or they could have damages in an action at law for its breach. They chose to have their contract with appellee executed, and that was an irrevocable election of remedies. It may be that damage resulted to appellants by reason of the failure of appellee to execute its contract, but they sought no damages at the time which had accrued up to the judgment directing an execution of the contract by appellee. It may be said that such damages as accrued, if any, were hazards of the business and appellants took their chance. If the price of lumber had gone up instead of going down they would have benefited by reason of the delay in the execution of the contract. They took their chance and made their election, and they cannot go back to the forks of the road and travel the road which they abandoned after having followed the other to the end.

Judgment affirmed.