**Bert COLLINGS et ux., Appellants,**

**v.**

**Samuel Randolph SCHEEN et ux., Appellees.**

Court of Appeals of Kentucky.

Feb. 3, 1967.

Rehearing Denied June 30, 1967.

S. J. Stallings, Robert P. Hastings, Louisville, for appellants.

James T. Carey, Louisville, for appellees.

R. C. TARTAR, Special Commissioner.

The plaintiffs, Bert Collings and his wife, Mary Collings, brought this action against defendants, Samuel Randolph Scheen and his wife, Elizabeth Wilson Scheen, alleging breach of contract by the latter for the sale and purchase of certain real estate to the damage of the former in the sum of $10,500.

The answer of defendants admitted the making of a contract with the plaintiffs on March 22, 1960, but denied that it was a contract for the sale and purchase of real estate and denied all other allegations of the complaint.

The defendants moved the trial court for summary judgment. The motion was heard on the affidavits of both sides and on the depositions of defendants taken by the

plaintiffs on discovery. The trial court granted the motion and dismissed the complaint with prejudice. The plaintiffs appeal.

Hereafter, for convenience, the plaintiffs will be referred to as Collings and the defendants as Scheen.

The record presents no contrariety of evidence in any material respect. But to give intelligent answers to the divergent contentions of law made by the parties, it will be necessary to quote extensively from the record.

On March 22, 1960, the parties entered into a contract relating to a house and lot located on Saratoga Drive in Louisville. The portions of the contract germane to the instant factual and legal imbroglio are as follows:

"First parties (Collings) have agreed to sell to second parties (Scheen) and second parties have agreed to buy from first parties said property together with all the improvements for the sum of $31,-500.00 as follows:

"Second parties shall pay to first parties the sum of $175.00 per month for the first year of the term of this agreement, the first payment being due and payable April 1, 1960, and a like and similar payment being due and payable on the first day of each and every month thereafter through March 1; 1961, and beginning April 1, 1961, shall pay to first parties the sum of $200.00 per month and a like and similar payment on the first day of each and every month thereafter until April 1, 1963. It being provided that said monthly payments shall first apply to interest on the agreed purchase price at the rate of 5% per annum and the balance of said payments to be credited on the principal amount of the purchase price after first deducting therefrom the premium on fire and tornado insurance on said property to be provided by first parties and charged to second parties and likewise the amount of all City, State and County taxes on said property due and payable from the date of this contract.

"Prior to April 1, 1963, second parties shall apply for and have approved at their own expense a commitment from some lending institution who will enter into a mortgage contract with second parties and thereafter make a mortgage on said property and will on or before April 1, 1963, accept a General Warranty Deed from first parties and at said time pay to first parties the purchase price herein agreed for said property less all credit against principal amount as may have accrued in accordance with this agreement. First parties will at said time execute and deliver to second parties, a Deed to said property and title to same such as Louisville Title Insurance Co. will insure.

"In this regard, time is of the essence of this contract and it shall be second parties responsibility to have all details completed for obtaining the mortgage on said property prior to April 1, 1963."

\*　　\*　　\*　　\*　　\*　　\*

"In the event second parties should fail to make any payments due under this contract or to keep any of the terms and conditions of same and said default shall continue for ten (10) days after receipt of written notice from first parties to second parties of such default, first parties may cancel this contract and treat the payments made hereunder as rent received for the use of said property and shall have the right to take immediate possession of same. In this regard, the parties hereto further agree that this contract shall be treated as a lease between the parties and shall be interpreted and treated as such by any Court in the Commonwealth of Kentucky where an action for its breach may lie, and it is further agreed first parties may proceed against second parties to have them evicted in an action for forceable detainer and said parties shall be considered as landlord and tenant for said purpose."

Scheen made the monthly payments specified through September 1962 but failed to make the payments due in October, November, and December 1962. On December 1, 1962, Collings gave written notice to Scheen of the latter's default, and in January 1963 filed an action against Scheen in a Jefferson County Magistrate Court seeking judgment for the defaulted October and November 1962 payments in the sum of $400. This action was pursued to judgment granted in favor of Collings in October 1964, which judgment Scheen paid.

At the time of the instant action, Scheen had paid Collings the total sum of $6,100 from the contract date. Scheen had vacated the property in January 1963.

In March 1963, Collings notified Scheen in writing that he insisted on fulfillment of the contract and that unless it was completed by April 1963 the property would be sold and Scheen held responsible for any deficiency. The property was subsequently sold for $29,500.

Scheen contends that upon his nonpayment of the October and November 1962 payments and the notice thereafter given by Collings, the latter had the following choice of remedies, (a) to stand on the contract of purchase and sale and seek its performance, or (b) to cancel the contract and retain the sums received as rent. Scheen contends that the action brought by Collings in the magistrate's court, after giving written notice of Scheen's default, constituted an irrevocable election to retain the moneys received as rent and a cancellation of the contract by Collings.

■ In granting Scheen's motion for summary judgment, the trial court accepted this view of the matter, adopting Scheen's contention. The doctrine of election of remedies is, of course, thoroughly entrenched in the jurisprudence of this State, and it is also received and almost universally approved. In a context of this kind, the doctrine simply means that when a person has at his disposal two modes of redress,

which are contradictory and inconsistent with each other, his deliberate and settled choice and pursuit of one will preclude his later choice and pursuit of the other. See Riley v. Cumberland & M. R. Co., 234 Ky. 707, 29 S.W.2d 3.

■ In our view, however, considering the contract and the acts of Collings relied on by Scheen, the doctrine cannot be applied here. There is nothing in the contract precluding an action for the recovery of unpaid installments as such. And the action brought by Collings in the magistrate's court "specifically reiterate(d) and reaffirm(ed) and adopt(ed) each and every provision" of the contract and sought judgment "without waiving any of their (Collings') rights or prerogatives." The lease and rental provisions of the contract, which we have quoted above and which are relied upon by Scheen, depended upon cancellation by Collings of the contract and its sale and purchase provisions. The notice given by Collings of Scheen's default contains no hint or suggestion of an election by Collings to cancel. Nor do we find anything in the action brought by Collings in the magistrate's court which would be construed as a declaration, expressed or implied, of any intent or purpose on Collings' part to cancel. We find no cancellation of the contract by Collings. We have to conclude, therefore, that the contrary contention and argument is untenable as a basis upon which the judgment of the trial court may be sustained.

Still, we think the judgment of the trial court must be sustained on another ground. The contract in controversy contains the following provision:

"Prior to April 1, 1963, second parties shall apply for and have approved, at their own expense, a commitment from some lending institution who will enter into a mortgage contract with second parties and thereafter make a mortgage on said property and will on or before April 1, 1963, accept a General Warranty Deed from first parties and at said time pay

to first parties the purchase price herein agreed for said property less all credit against principal amount as may have accrued in accordance with this agreement."

This provision imports an agreement by the parties that the sale and purchase provisions required the stated financing and an understanding that these provisions were not to be finally operative and obligatory unless Scheen was able before April 1, 1963, to obtain the stated commitment from some lending institution and thus provide payment to Collings of the balance due on the purchase price. This was a condition precedent to the effectuation of these provisions—the act or event, as such a condition is defined, upon the performance or happening of which the sale of the property by Collings and its purchase by Scheen was made to depend. See 17 Am.Jur.2d, Section 19, page 751. It is plain that the provisions quoted imposed on Scheen only an obligation to apply for and have approved, if he could, the stated commitment and financing from some lending institution and did not impose an unconditional obligation to buy.

Moreover, the undisputed facts show that the lengthy contract in suit, drawn with care and design and severe in its terms, was prepared at the instigation of Collings and was never seen by Scheen until presented for signature. Scheen, a neophyte in business, accepted it without advice from counsel or friend. He was a physician just entering practice. He was poor and in debt, and he and his wife had four children. He could not afford a separate office but shared the office of a friend. For a beginner in medical practice, in debt, and with these family responsibilities, the purchase price specified in the contract, $31,500, was beyond his capacity. He could not meet its installments, and he was unable to contract for the stated financing. The circumstances surrounding the execution of this contract are related best by Dr. Scheen's testimony:

"Q. 25 And do you recall any of the terms of the agreement?

A. Yes, the agreement as I understand it, was that this was a lease with an option to buy the property at the end of three years, if my practice progressed to the point where we were able to come with sufficient first mortgage for the property, if we didn't he would lend us, I think, I see the paper you showed me."

* * *

"Q. 56 Now when you moved in the house didn't—did you anticipate buying the house?

A. We liked the house, and we hoped we would be able to afford it, at at one time I asked Mr. Collings, at the time, or before we moved in, and I told him that I was just starting in practice which I was, and understood about the agreement and about lending $5000.00 and so forth, and I said, Mr. Collings now suppose I am in a position where I cannot get a first mortgage even with the money you are lending me to take over the house at the time specified, what would happen then? I don't want to get involved in something I can't take care of. He said, if that is the case, I won't hold you to it."

* * * * * *

"Q. 72 Doctor, of course, we are talking about the monthly payments which we have estimated were $200.00 a month for the premises 2535 Saratoga Drive. We fully understand each other when we are talking about these payments?

A. It was the money I was giving Mr. Collings each month; which we were not able to pay in September, and October, November and December, and I guess that would include January."

Again, there is no question or issue of fact that Scheen was unable to meet the monthly installments. Nor is it questioned that he was unable to negotiate the loan by which the sale was to be financed and Collings paid for the property.

An unusually striking analogue to the case at bar, both factually and legally, will be found in Hawkins & Chamberlain v. Mathews, 242 Ky. 732, 47 S.W.2d 547. The contract at issue in that case provided:

"I, Anna Hengehold of Covington, Kentucky, have this 31st day of July, 1929, bargained and sold to Claude and Margaret Mathews through Hawkins & Chamberlain, Real Estate Brokers, a certain parcel of property, (here follows description) at the agreed price of Nine Thousand ($9,000.) Dollars, to be paid as follows: At least $1500.00 plus an amount of not less than $6,000. obtained on loan in a building association secured by a first mortgage, to be paid in cash; balance evidenced by notes bearing interest at 6% per annum, payable within two years, $600.00 or more of which is to be payable within one year. Said payment of notes to be secured by a mortgage second only to the first mortgage above mentioned."

This contract had been signed by Anna Hengehold and accepted in writing by Mathews, who also paid $500 to Hawkins & Chamberlain Real Estate Brokers to bind the bargain. Being unable to obtain the loan of $6,000, Mathews sued to recover the $500 paid. The opinion recites that the Mathews were people of modest means and that the idea of the loan originated with the real estate brokers. But they could not secure the loan and could not carry out contract. Holding for Mathews, this court said:

"The contract could not be carried out because the $6,000 mortgage would not be accepted. The evidence showing these facts does not impugn the written contract, for it expressly provides that the price to be paid among other things thus: 'An amount of not less than $6,000. obtained on loan in a building association secured by first mortgage.' The contract is executory. By its words the above is one of the conditions of the contract, and, when this condition could not be carried out, the contract is not enforceable. As the contract could not be carried out, appellees were entitled to the return of the $500 paid under the contract."

The court rejected the contention that this result involved an improper variation of the written terms of the contract by parol evidence. "Contracts," it was pointed out, "must be construed from the standpoint of the parties, and the terms employed must be given effect from that standpoint." The court went on to say:

"A rule of likewise universal application is that, to aid the court in determining the intention of the parties, it may consider their situation and circumstances, the conditions surrounding them at the time of making the contract, and the object intended to be accomplished thereby. The essential thing is for the court to look at the contract from the standpoint of the parties at the time they executed it, and the purpose they had in view in doing so."

These principles apply here. It was a condition to the consummation of the instant contract that prior to April 1, 1963, Scheen should make application for and obtain approval at his own expense of a commitment from some lending institution, which would on or before said date make a mortgage on the property and pay Collings the balance of the purchase price. Scheen was not able to do this. The condition could not be carried out, and therefore the contract is not enforceable.

No equities appear in this record to lend any support to the claim of Collings. His house had been without a tenant for years. He has received $6,100 from Scheen and has sold his house for $29,500. He has not

been injured by the failure of a contract under which he had agreed in effect that it would be forgotten if Scheen was unable to secure the described loan within the time specified. This occurring, he may no longer pursue Scheen on the contract. The condition failing, as stated, the contract became unenforceable.

This is a proper case for summary judgment. The record presents no factual issues of substance. There are issues of law only which for reasons given we conclude should be resolved in favor of Scheen.

The judgment is affirmed.