**BILLY WILLIAMS BUILDERS AND DE-VELOPERS INC., a Corporation, Appellant,**

v.

**Joseph L. HILLERICH and Delores Hillerich, Appellees.**

Court of Appeals of Kentucky.

Feb. 28, 1969.

As Modified on Denial of Rehearing Oct. 24, 1969.

George B. Ryan, Louisville, for appellant.

Robert P. Hastings, Louisville, for appellees.

EDWARD P. HILL, Judge.

Appellees (hereinafter Hillerich) sued appellant (hereinafter Williams) for specific performance of a contract to convey a house and a lot, for damages growing out of the defective construction of the house, and for damages due to delay in performance. Equity directed specific performance and transferred the case to the common law docket, where a jury later returned a verdict for appellees for $3318 in damages resulting from defective construction and for $910.38 in damages occasioned by delay in performance. Williams appeals.

Williams forcefully argues that: (1) Hillerich cannot have specific performance and damages; (2) Hillerich did not prove damages; (3) the verdict is excessive; (4) Hillerich judicially admitted a breach of contract, precluding recovery; (5) Hillerich first breached the contract by failure to make a down payment; and (6) the court erred in directing a verdict for Hillerich on Williams' counterclaim.

The main thrust of Williams' argument concerns the right of the buyer to have two remedies (1) specific performance of a contract to purchase real estate (a house and a lot) and (2) damages for defective construction and for delay in performance. Williams argues that by complying with the judgment for specific performance and

by accepting the deed to the property, Hillerich elected to have one of two inconsistent remedies; and by so doing, he cannot back up to the "forks of the road" and take a road different from the one on which he "first embarked."

■ In a proper case there can be little doubt that one may be entitled to the specific performance of a contract to purchase real estate and damages for delay in performance. Miller v. Talbott, 239 Md. 382; 211 A.2d 741. But damages for deficiency of quantity or quality present a more complex question, on which there is some conflict among the authorities. We look to the writings of text writers and then to the recorded opinions here and elsewhere for guidance.

First we note comments by text writers.

In Restatement of the Law, volume 2, Contracts, § 365, at page 659, it is said:

"Specific Enforcement in Part, With Compensation for the Remainder.

"The fact that a part of the promised performance cannot be rendered, or is otherwise such that its specific enforcement would violate some of the rules stated in §§ 360–380, does not prevent the specific enforcement of the remainder, if in all other respects the requisites for specific enforcement of that remainder exist. Compensation for the partial breach that still remains may be awarded in the same proceeding, either as damages, restitution, or an abatement in price."

\* \* \* \* \* \*

"A contracts to transfer land to B and also to make certain repairs and to complete an unfinished building on the land. In case of repudiation by A, B may be given a decree for specific performance, with an abatement in the price or other compensation sufficient in amount to en-able him to make the repairs and complete the building himself."

See also 81 C.J.S. Specific Performance § 21b(2), and 49 Am.Jur., Specific Performance, § 105, page 123.

We find in Thompson on Real Property, volume 8A, chapter 57, § 4482, at page 487, the remedies available to both vendor and purchaser clearly defined in this fashion:

"Whether the vendor or purchaser is the plaintiff there are three alternatives presented when the vendor is able to give only a performance nonconforming in quantity, *quality* or value: (1) to refuse the remedy of specific performance; (2) to enforce the contract without any regard to the partial failure; (3) to decree a conveyance and allow the vendee an abatement from price equal to the value of the deficiency in the performance. If the vendor cannot convey the agreed quantity of the estate the vendee may have specific performance with pro tanto abatement of purchase price." (Emphasis ours.)

See also 95 A.L.R. page 228, which cites cases from fifteen states and Pomeroy's Equity Jurisprudence, volume 1, § 237b.

As will be seen from annotations in some of the authorities above cited, the state courts are not of one accord in following the rule announced above. They seldom are.

Up to now, it has been extremely difficult to determine the position of this court on the specific questions here discussed. Appellant, after relying on the Pennsylvania case of McHale v. Reilly, 274 Pa. 175, 117 A. 912, also cites Lutes' Adm'r v. Gray-Von Allmen Sanitary Milk Co., 254 Ky. 750, 72 S.W.2d 720; Riley v. Cumberland & Manchester R. Co., 234 Ky. 707, 29 S.W.2d 3; Potts v. Strickland, 304 Ky. 777, 202 S.W.2d 392; Rowe v. Shepherd,

Ky., 283 S.W.2d 188; and Collings v. Scheen, Ky., 415 S.W.2d 589.

In *Lutes, supra,* a personal injury action, questions of election of remedies and limitation of action were involved. While there are elements of the doctrine of election of remedies involved in a request for specific performance and damages for breach, the opinion in *Lutes* does not help solve our problem.

The claim for damages in *Riley, supra,* came in a suit filed some time after the conclusion of the first suit in which specific performance was adjudged. The court held the second suit to "recover damages occasioned by the delay in compelling specific performance" could not be maintained, reasoning that plaintiff was faced with an election of remedies and having elected to seek specific performance could not later demand damages for delay. After announcing the rule in *Riley* (as between actions for damages for breach of contract and suits for specific performance), the court went on to say at page 4 of 29 S.W.2d:

"But the general rule, although there are many exceptions to it, need not be considered by us because appellants not only commenced their action for specific performance, but they prosecuted it to final conclusion and obtained fully all the relief sought."

It may have been more appropriate for the court in *Riley* to hold appellants estopped by judgment or *res judicata,* for they should have asserted their claim for damages in the first suit.

Before leaving Riley, it must be said that there is strong language in the last paragraph of the opinion which supports the position of appellant here, but it is pure dictum.

In *Potts, supra,* there was a controversy between a husband and his wife's devisee, in which the husband claimed a one-half interest in the land. The husband had previously sued his wife for one-half the proceeds of the sale of the property. The court properly held the husband had an election, exercised it, and was estopped to sue devisee, applying the doctrine of election of remedies. We are not persuaded that the rule in *Potts* controls the present case.

The *Rowe* case, *supra,* involved a simple question of estoppel by judgment between the same parties and their privies in title. Again we say *Rowe* sheds no light on the present case.

We find nothing in *Collings, supra,* akin to the present question.

With the exception of the dictum in *Riley, supra,* we find no opinion of this court touching the specific question here involved. We look to other states to see what they have said.

In Rocks v. Brosius, 241 Md. 612, 217 A.2d 531 (1966), the Maryland court allowed damages growing out of the construction of a "temporary haul road because of improper performance of the work itself," along with specific performance. The court held that such damages were "similar" to damages resulting "from delay" in performance.

South Carolina is not in accord with the rule that general damages may be awarded incidental to specific performance. It was held in Spencer v. National Union Bank of Rock Hill, 189 S.C. 197, 200 S.E. 721, that "special" damages may, but "general" damages may not be awarded with specific performance.

■ It is recognized that specific performance is an equitable remedy devised to apply in cases where common law actions for damages were found inadequate to afford a full remedy. See Edelen v. W. B. Samuels & Co., 126 Ky. 295, 103 S.W. 360. The doctrine, first adopted in England, met with formidable opposition, but it has survived. In fact, its scope has been enlarged down through the years.

We need to keep in mind that in the contract in question vendor (appellant) agreed to sell lot 102 and to construct a house according to "submitted plans and specifications." Not only did appellant agree to convey the lot and residence to be built, but he undertook to build the house according to the "plans and specifications."

Appellees argue that their purpose in entering into the contract was to obtain this particular property in this particular neighborhood due to aged relatives nearby; that they are entitled to specific performance notwithstanding appellant's breach of the contract to construct the house according to plans and specifications.

In Pomeroy's Specific Performance of Contracts, 3 ed., § 438, p. 903, it is said:

"The general doctrine is firmly settled, both in England and in this country, that a vendor whose estate is less than or different from that which he agreed to sell, or who cannot give the exact subject-matter embraced in his contract, will not be allowed to set up his inability as a defense against the demand of a purchaser who is willing to take what he can get with a compensation. The vendee may, if he so elect (sic), enforce a specific performance to the extent of the vendor's ability to comply with the terms of the agreement, and may compel a conveyance of the vendor's deficient estate, or defective title or partial subject-matter, and have compensation for the difference between the actual performance, and the performance which would have been an exact fulfillment of the terms of their contract."

This court decided in Preece v. Wolford, 196 Ky. 710, 246 S.W. 27, 28, that vendee may have "specific performance as to such title as the vendor can furnish, and may also have a just abatement from the purchase money for the deficiency of title or quantity or *quality* of the estate." (Our emphasis.) We can see no reason for a distinction between a deficiency in quantity (short acreage or lack of title) and deficiency of quality (defective construction).

We conclude that appellees' remedies were not inconsistent so as to require an election of remedies and that the chancellor did not err in granting specific performance and directing that damages be ascertained by the common law division of the court.

Appellant's second and third points, that appellees did not prove damages and that the amount of the verdict is excessive, will be treated as one.

Appellant reminds us that appellees' own qualified witness testified the value of the property was slightly in excess of the contract price and that although appellee Joseph L. Hillerich testified the market value was $18,000, they (appellees) are bound by the testimony of their own witness, who, according to appellant was more qualified than Mr. Hillerich. With this argument we cannot agree. Appellee, an engineer, purchased, owned, and occupied a residence in the vicinity eighteen months prior to the date of the contract in question. He testified he was familiar with real estate in this "particular area;" that he had watched want ads of real estate and had "studied pamphlets" showing listings and prices "put out" by the real estate board. Taking his evidence, there was a difference between the contract price and the value of the property in its so-called defective condition of $3846. The jury awarded $3318. On this item we conclude the evidence supported the verdict and that the amount is not excessive. In addition appellees introduced evidence of two architects that it would cost $4200 to $6000 to remedy the claimed defects in construction.

Concerning damages occasioned from delay in performance, appellee Hillerich testified to itemized damages amount-

ing to $2638.44. The jury found $910.38 for appellees on this item. We do not find this part of the verdict excessive.

We also treat appellant's fourth and fifth points as one. They state that appellees "judicially" admitted a breach of contract, precluding recovery (failure to make a down payment), and that to make the down payment was a condition precedent to the right of the specific performance (appellees completely ignore this argument in their brief).

The contract stipulates that the consideration was as follows:

" * * * [T]he sum of twnety-one thousand dollars ($21000.00) payable as follows, $6300 down, balance of $14700 thru first mortgage, payable $110 per month, principal, interest, taxes, & insurance included, 30 years."

The contract did not provide specifically when the down payment was to be made. We think it implied it was to be made on delivery of the deed due to the following circumstances: Appellant never at any time during their negotiations, nor at the time the contract was signed, demanded the down payment; appellant did not object to the entry of decree of specific performance but accepted the full contract price and executed deed. Of course, it may be said that appellant did so pursuant to the decree and that his act in so doing was in obedience to the decree and was therefore involuntary, which is perhaps true. Appellants did not object to the instructions or offer any instruction for the jury. It should be pointed out, in fairness to appellant's present counsel, that during all the proceedings in the trial court appellant had counsel other than the one representing him on this appeal.

Appellant's final argument is that the trial court erred in directing a verdict for appellees on appellant's counterclaim.

The trial court, both the equity and the common law divisions, we think, correctly determined the issues favorable to appel-

lees. Obviously the court could not find for appellees and for appellant both on their antagonistic contentions. We find this argument without merit.

The judgment is affirmed.

All concur.