### The Joseph Goldberger Iron Company v. The Cincinnati Iron & Steel Company.

(Decided March 19, 1913.)

### Appeal from Kenton Circuit Court
### (Common Law and Equity Division).

1. Trover and Conversion—What Necessary in Order to Recover in.
—In order to recover in trover it is not necessary for the plaintiff to allege or prove the precise day of the conversion; the action may be sustained upon proof that the conversion was made on a day other than that alleged in the petition.

2. Trover and Conversion.—In an action in trover for a conversion by the wrongful taking of property, it is not necessary to prove a demand and refusal of the defendant to surrender the property.

3. Trover and Conversion—What Necessary to Maintain Action.—
Where a plaintiff has either the possession of a chattel or the right to immediate possession thereof, he may maintain an action in trover for its conversion.

4. Remedies—Rule as to Prosecution of Remedial Right—Bar—Election.—The general rule is that the prosecution of one remedial right to judgment or decree, whether the judgment is for or against the plaintiff, is a decisive act which constitutes a conclusive election, and bars a subsequent prosecution of inconsistent remedial rights; but where the first action was dismissed before judgment it does not operate as such an election.

MILLER OUTCALT and BYRNE & READ for appellant.

CHARLES A. J. WALKER and H. C. BUSCH for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This suit for trover and conversion by the appellee against the appellant arose out of the following facts: By a written contract of July 26, 1909, The Cincinnati Iron & Steel Company sold to Joseph Goldberger, who was then doing business in Cincinnati under the name of Joseph Goldberger Iron Company, a shear for cutting all kinds of iron and steel. The machine was to be paid for in installments as the work progressed; the first payment

being due on or before September 1, 1909. Some question having arisen about the terms of the contract, it was finally agreed between the parties that Goldberger should not be required to pay for the machine until after it had been installed. By this verbal arrangement, the steel company agreed to accept Goldberger's note for $4,800.00, that being the purchase price of the machine, the title thereof to remain in the steel company. As the machine weighed about 175,000 pounds, it was necessary to make an extensive concrete foundation work for its reception. On November 9, 1909, Goldberger appeared at the office of the steel company, and, having stated that the machine had been installed and was satisfactory, he gave the following note for the purchase money:

"$4,800.                    Cincinnati, November 9, 1909.
"Four months after date we promise to pay to the order of the Cincinnati Iron & Steel Company, four thousand and eight hundred dollars, at five per cent. Value received.                    Jos. Goldberger Iron Co.
                                        "Jos. Goldberger.
"No. 102, due March 9, 1910."

Some time in January, 1910, Goldberger began the formation of a corporation to take over his business and to be known as "The Joseph Goldberger Iron Company." The incorporation was effected about February 8, 1910. when the charter was applied for, and it was actually engaged in business as early as February 19, 1910.

Joseph Goldberger was the owner of and used in his business certain real estate in Cincinnati, adjoining the Pennsylvania station, on East Front Street, known as the "old waterworks plant." He sold his business to the new corporation, including the real estate and all the assets of the former business, such as a leasehold, stock, scrap-iron and steel on hand, and all the machinery. He became the president of the new corporation, owning practically all of its stock, and remained in complete charge thereof until it failed and went into the hands of a receiver on October 6, 1911. It is contended by appellant that Goldberger did not sell the shear in controversy to the new corporation, although he sold and turned over to it all the motors, pulleys and machinery connected with the shear. It is reasonably certain, however, from the proof, that the corporation used the machine from about February 19th, and perhaps earlier, until its failure; and during

this period the machine cut about three million pounds of scrap-iron and steel. When Goldberger's note matured on March 9, 1910, it was not paid, and on April 2, 1910, The Cincinnati Iron & Steel Company filed a suit against Goldberger in Cincinnati on the note; and, at the same time, it filed another suit in the same court in Cincinnati against "The Joseph Goldberger Iron Company" for the conversion of the shear. Subsequently, on July 14, 1910, the steel company filed this action in the Kenton Circuit Court in Kentucky against "The Joseph Goldberger Iron Company" for the conversion of the machine, and took an attachment against the corporation's property in Kentucky. On April 18, 1911, the two actions in Cincinnati were dismissed without prejudice, nothing having been done therein except the filing of the petitions and answers. The steel company then proceeded to try this action which had been filed in the Kenton Circuit Court. It resulted in a verdict and judgment for $4,800.00 for appellee against appellant, and from that judgment this appeal is prosecuted.

For answer, "The Joseph Goldberger Iron Company" presented the following defenses: (1) there could not have been a conversion on February 3, 1910, as alleged in the petition, since the corporation was not organized and was not capable of doing any corporate act until February 8th, 1910; (2) the steel company could not recover because it failed to show a demand for the return of the machine and a refusal on the part of the defendant, both being necessary, according to appellant's contention, to establish a conversion; (3) that appellee failed to show that it was actually possessed of the shear alleged to have been converted, at the time of the conversion, or that it had the right to the immediate possession thereof; and (4) that in electing to sue Goldberger on the note, the steel company is bound by its election of that remedy and is estopped from suing the corporation for conversion which was based upon the inconsistent claim that the title to the shear remained in the steel company; and that by suing Goldberger it had waived its right to take the property back. This last defense is based upon the theory that the suit against Goldberger in Ohio necessarily conceded that the title to the machine had passed to Goldberger. We will notice these several grounds of defense in the order stated.

1. We do not understand the rule to be that in order to recover in trover it is necessary for the plaintiff

to allege or prove the precise day of the conversion; on the contrary, the action may be sustained upon proof that the conversion was committed on a day other than that alleged in the petition. Peacock v. Feaster, 51 Fla., 269; Hixon v. Pixley, 15 Nev., 475; Aldrich v. Higgins, 77 Conn., 370; Dietus v. Fuss, 8 Md., 48. In the case at bar the first instruction authorized the jury to find against the appellant if it converted the machine to its own use on or before February 19, 1910, with interest from the day of the conversion; and in response to that instruction the verdict gave interest from February 19, 1910, until paid. In this verdict the jury found as a fact that the corporation converted the machine to its own use on the day it began business; and this finding is fully supported by the evidence. There is no error here.

2. Was a demand on "The Goldberger Iron Company" for a return of the machine necessary before the plaintiff could maintain an action for its conversion? It is claimed by appellant that such a demand was necessary upon the theory that trover will not lie against one who comes lawfully into possession of property, until after demand for its return and a refusal thereof; and as appellee neither alleged a demand in its petition nor proved it, the judgment should have gone peremptorily for the appellant. The rule is that where an actual conversion is alleged, as here, an averment of demand and refusal is not required. Or, as stated by Chitty:

"In the case of a conversion by wrongfully taking it is not necessary to prove a demand and refusal; and the intent of the party is immaterial; and if defendant acted under the supposition that he was justified in what he did, or as the servant of, and for the benefit of, another person, he will be equally liable to this action." 1 Chitty's Pleading, 153.

The reason for the rule is that while a demand and refusal may afford satisfactory evidence of a conversion, they do not constitute the only evidence by which a conversion may be proved, since any wrongful exercise or dominion over chattels to the exclusion of the rights of the owner, or a withholding of them from his possession under a claim inconsistent with his rights, constitutes a conversion. Newcomb-Buchanan Co. v. Baskett, 14 Bush, 658. This general rule has been fully recognized in Ohio where these transactions were had, in B. O. R. R. Co. v. O'Donnell, 49 Ohio St., 489; 21 L. R. A., 117; 34 Am. St. Rep., 759, where the Supreme Court of Ohio said:

"It is contended that, where the property of one person has lawfully come into the possession of another, a refusal by the latter to deliver it to the owner on his demand is necessary to constitute a conversion of it, and therefore the petition, in an action for its conversion, must contain an allegation of such demand and refusal. The allegation is not essential. A refusal to deliver the property on demand of the owner may show such an assumption of ownership or control of it as to afford satisfactory evidence of a conversion, but it is only evidence. The ultimate fact to be pleaded is the conversion; and in actions of that nature a petition with proper allegations of plaintiff's ownership of the property and of its value, and which avers that the defendant converted it to his own use, states a cause of action." To the same effect see Doggett v. Gray, 110 Cal., 169; Buntin v. Pritchett, 85 Ind., 247; Kendall v. Duluth, 64 Minn., 295; Norman v. Horn, 36 Mo. App., 419; Schmidt v. Garfield Nat. Bank, 64 Hun., 298, affirmed in 138 N. Y., 631; Johnson v. Ashland Lumber Co., 45 Wis., 119. The appellee's petition fully complies with these requirements of good pleading.

We attach no importance to the contention of appellant that trover did not lie for conversion of the machine because it was attached to the freehold, since it was a trade-fixture whose removal was as easy and practicable as its installation. Moreover, as appellant contends it bought the land upon which it was situated but did not buy the machine, it is somewhat difficult to understand how it reconciles that claim with its present contention that the machine is a part of the realty.

3. With respect to appellant's claim that appellee could not maintain trover for the conversion of the machine because appellee was not entitled to immediate possession thereof at the time of the conversion, it is sufficient to say that the proof thoroughly establishes the fact that the title and ownership of the machine remained in the steel company until it was paid for. This fact was expressly set up and relied upon by Goldberger in the Cincinnati suit upon the note. Under this contract and the Ohio Law, appellee had the undoubted right to reclaim the machine; and that being true, it necessarily follows that it had the right to sue for its conversion. Sanders v. Keber, 28 Ohio St., 630; Albright v. Meredith, 58 Ohio St., 194. It is a significant fact that Goldberger did not testify on the trial of this case.

4. Was the suit against Goldberger in the Cincinnati

court upon the note, such an election of his remedy as would estop him from subsequently prosecuting this suit against the corporation for conversion of the machine? The general rule is that the prosecution of one remedial right, to judgment or decree, whether the judgment is for or against the plaintiff, is a decisive act which constitutes a conclusive election, and bars the subsequent prosecution of inconsistent remedial rights. 15 Cyc., 295. In suport of this conclusion, the author cites Albright v. Meredith, 58 Ohio St., 194. But the Cincinnati suit proceeded no further than the answer, and was subsequently dismissed without prejudice. Under the rule above announced, which is also the rule in Ohio, the institution and dismissal without prejudice of the Cincinnati suit was not a conclusive election against the maintenance of this action, since there was no judgment or decree in the Cincinnati suit. In Tuttle v. Burgett's Admr., 53 Ohio St., 698; 30 L. R. A., 314, it was held that a grantee who had agreed to support his grantor during life, in consideration of a conveyance of property, was not discharged from his obligation by bringing a suit to set aside the conveyance and recover back the property, where the suit had been abandoned and dismissed without trial, and the grantee had not been disturbed in the possession or enjoyment of the property. In view of the Ohio authorities upon the point, we conclude that a further prosecution of this inquiry is not necessary for the decision of this case. But if there were any doubt upon the subject, the correctness of the rule above stated would be emphasized by a consideration of the fact that this action for a conversion of the machine and the suit on the note were not between the same parties. The Cincinnati suit was upon the note and against Goldberger individually, while this action is in trover and against the Joseph Goldberger Iron Company only. There is nothing whatever inconsistent in the two actions and it is apparent that the appellant had nothing whatever to do with the first action and has not been prejudiced thereby.

Some question is made in appellant's brief as to the ruling of the court in excluding testimony offered by appellant, which showed certain facts attending the installation and operation of the machine. Appellant introduced quite a good deal of testimony tending to show that the machine did not fulfill the requirements of the original contract made with Joseph Goldberger. The court permitted appellant to introduce this testimony

tending to show the inefficiency of the machine upon the question of its value; and of this appellant cannot complain.

The instructions given are proper and fully cover the law of the case. The instructions asked by appellant were based upon its contention as to the effect of the Cincinnati suit as a conclusive election against appellee's right to maintain this action and were properly refused for the reasons above given.

Judgment affirmed.