Robert Parker WILSON, Appellant,

v.

LOWE'S HOME CENTER, Steve
Duncan, Chris Choate and
Tom Phillips, Appellees.

No. 2000–CA–002288–MR.

Court of Appeals of Kentucky.

Dec. 28, 2001.

Discretionary Review Denied
by Supreme Court June 5, 2002.

Douglas S. Haynes, Vicki Buba, Louisville, Kentucky, for Appellant.

Richard C. Stephenson, Amy C. Liebermann, Lexington, Kentucky, for Appellee.

Before BUCKINGHAM and McANULTY, Judges; and MARY COREY, Special Judge.[1]

*OPINION*

BUCKINGHAM, Judge.

Appellant Robert Parker Wilson appeals from a summary judgment granted by the Jefferson Circuit Court dismissing his civil complaint against Appellees Lowe's Home Center, Steve Duncan, Chris Choate, and Tom Phillips. Because we conclude that the trial court erred in awarding the appellees summary judgment, we affirm in part, reverse in part, and remand.

Wilson, an African–American, began working for Lowe's at its Fern Valley store in Jefferson County in November 1991. He continued to work at the Fern Valley store until he was transferred to the new Lowe's store on Dixie Highway in Jefferson County on June 11, 1999. Wilson alleged that he had been subjected to extreme racial remarks, verbal abuse, intimidation, and harassment nearly every day beginning shortly after he started working in 1991 and continuing until his transfer to the new store in 1999. He alleged the instances involved coworkers as well as management personnel. He indicated that his concerns were brought to the attention of the supervisory personnel who participated in the alleged actions as well as to other persons in management who had a responsibility to correct the behavior. He further alleged that the actions continued despite his complaints.

On March 31, 1999, Wilson filed a complaint with the Kentucky Commission on Human Rights (KCHR) alleging racial discrimination as well as the fact that management had allowed a racially hostile work environment.[2] The KCHR set a

---

1. Senior Status Judge Mary Corey sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution.

2. Wilson's complaint to the KCHR also result-

hearing date for December 29, 1999. Wilson requested to withdraw his complaint, and on June 8, 1999, the KCHR forwarded a letter to him with an attached document which, when signed by Wilson, would have withdrawn his claim. Because the KCHR apparently provided an incorrect form to Wilson, on June 22, 1999, it sent a second letter to him. The second letter contained a new form for withdrawal of the claim, and Wilson signed it on July 23, 1999. The document clearly indicated his desire to withdraw his claim with the KCHR, his request for a "Notice of Right to Sue" from the EEOC, and his intent to pursue the matter through his private attorney.

The EEOC subsequently provided Wilson with a "Notice of Right to Sue" which was dated July 28, 1999. On August 20, 1999, the KCHR entered a "Withdrawal Order" which stated that Wilson's claim was withdrawn without prejudice to him.[3] Thus, as a result of the documents issued by the KCHR and the EEOC, as of August 20, 1999, Wilson had no action open or pending on his discrimination complaints.

On September 7, 1999, Wilson filed a three-count civil complaint in the Jefferson Circuit Court. The first count, alleging racial discrimination by Lowe's management personnel, sought to impose vicarious liability on Lowe's under the Kentucky Civil Rights Act (KRS[4] Chapter 344). The second count, alleging the creation of a hostile work environment, was also directed at Lowe's. The third count, consisting of a claim of intentional infliction of emotional distress (IIED), was directed at Lowe's as well as each of the three individually named defendants.[5] The factual background for Wilson's complaint consisted of the same facts originally raised in his complaint filed with the KCHR.

On September 13, 2000, the trial court awarded summary judgment to the appellees. Concerning Wilson's claims against Lowe's for violations of KRS Chapter 344, the trial court held that they were barred by the doctrine of election of remedies. Concerning Wilson's IIED claims, the court rejected the appellees' argument that the claims were barred by the doctrine of preemption. However, the court granted the appellees summary judgment on Wilson's IIED claim, finding that "the record herein does not contain sufficient evidence of an egregious character to survive a motion for summary judgment." This appeal by Wilson followed.

■■■ Pursuant to CR[6] 56.03, a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The rule should be "cautiously applied," and "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Ctr., Inc.*, Ky., 807 S.W.2d 476, 480

---

ed in an action being opened with the Equal Employment Opportunity Commission (EEOC).

3. 104 Kentucky Administrative Regulations (KAR) 1:020, Section 2(6) provides that a complainant may withdraw his complaint without prejudice so long as written consent is given.

4. Kentucky Revised Statutes.

5. The individually named defendants, Duncan, Choate, and Phillips, each held management positions at Lowe's Fern Valley store at various times during the seven years Wilson worked there.

6. Kentucky Rules of Civil Procedure.

(1991). "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

The first issue is whether the trial court correctly granted the appellees' summary judgment on Wilson's claims against Lowe's for civil rights violations. KRS 344.040 prohibits, among other things, discrimination by an employer based on an individual's race. As we have stated, the court held that Wilson's claims were barred by the doctrine of election of remedies. KRS Chapter 344 establishes separate avenues for recovering damages due to civil rights violations. A party claiming discrimination may file a complaint with the KCHR pursuant to KRS 344.200. The complainant may be awarded damages, which include "compensation for humiliation and embarrassment," under KRS 344.230(3)(h). However, KRS 344.450 provides an aggrieved party an alternative remedy of filing a civil action for damages in circuit court.

Because KRS Chapter 344 creates two separate avenues upon which a complainant may proceed in an effort to recover damages, another statute addresses jurisdictional issues that could arise between the administrative process and the judicial process. The applicable statute reads:

> The provisions of KRS 13B.140 notwithstanding, commission shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance under KRS 344.450 is pending. A state court shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance is pending before

the commission. A final determination by a state court or a final order of the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other administrative action or proceeding brought in accordance with KRS Chapter 13B by the same person based on the same grievance.

KRS 344.270. As noted in *Berry v. General Electric Co.*, 541 F.Supp. 800 (W.D.Ky. 1982), the Kentucky legislature created separate avenues for the enforcement of civil rights violations and provided that the two avenues are alternative, not identical, means of obtaining relief. *Id.* at 802.

Because Wilson initially filed his complaint with the KCHR, the trial court held that the doctrine of election of remedies barred his circuit court claim. In doing so, the court relied on *Vaezkoroni v. Domino's Pizza, Inc.*, Ky., 914 S.W.2d 341 (1995).

In the *Vaezkoroni* case, the aggrieved employee filed three separate complaints with the Lexington–Fayette Urban County Human Rights Commission. *Id.* In each instance, the commission investigated the allegations, issued a "No Probable Cause" determination, and dismissed the complaint. *Id.* Following the dismissal of the complaints by the commission, Vaezkoroni filed a civil complaint in the Fayette Circuit Court based on the same allegations. *Id.* at 342. The trial court awarded summary judgment in favor of the employer, and a panel of this court affirmed the trial court based on the doctrine of *res judicata.* *Id.* In affirming the result of this court's panel for different reasons, the Kentucky Supreme Court held that the administrative and judicial avenues of relief in KRS Chapter 344 were alternative avenues of relief and that it would be absurd to allow an individual to choose an administrative remedy and then have the option of judi-

cial relief.[7] *Id.* The court also stated that "[o]nce any avenue of relief is chosen, the complainant must follow that avenue through to its final conclusion." *Id.* at 343.

Although it was not addressed by the trial court in the case *sub judice* in its judgment, the case of *Founder v. Cabinet for Human Resources,* Ky.App., 23 S.W.3d 221 (1999), involves somewhat similar circumstances. In *Founder,* an aggrieved state employee filed a complaint with the Kentucky Department of Employment Services (DES). *Id.* at 222. When he did not receive a favorable response from the DES regarding his grievance, the employee appealed to the Kentucky Personnel Board. *Id.* The appeals were unsuccessful, and the employee did not appeal any of the decisions to the circuit court. *Id.*

The employee also filed separate complaints with the EEOC and the KCHR. *Id.* While these complaints were still pending, the employee filed a civil suit in the Franklin Circuit Court. *Id.* The circuit court granted summary judgment against the employee and, on appeal, a panel of this court affirmed the trial court based on KRS 344.270 (lack of jurisdiction) and the *Vaezkoroni* case. *Id.* at 224. The court held that "[f]rom our reading of the language in KRS 344.270 and *Vaezkoroni,* once a complaint is filed with the Commission, a subsequent action in circuit court based on the same civil rights violation(s) is barred." *Id.* at 223.

At first glance, the *Vaezkoroni* and *Founder* cases appear to support the trial court's summary judgment ruling and resolve this matter in favor of Lowe's. However, to do so ignores the factual differences between those cases and the case *sub judice.* The *Vaezkoroni* case involved an aggrieved employee who had filed three separate complaints with the local human rights commission, each of which was pursued to final determination before that commission. 914 S.W.2d at 341. Clearly, the employee had completely and unsuccessfully pursued the administrative avenue of relief to a final determination before pursuing the judicial avenue. As the Kentucky Supreme Court stated, it would be "absurd" to allow the employee an alternative avenue of relief when the first avenue resulted in failure. *Id.* at 342. The *Founder* case involved an employee who had filed for recovery through the administrative process and then had filed a civil suit in circuit court while the administrative proceedings were pending. 23 S.W.3d at 222. Because KRS 344.270 deprived the circuit court of jurisdiction of the complaint due to the pendency of the grievances before the administrative body, this court affirmed the trial court's summary judgment in favor of the employer. *Id.* at 224.

The facts here present a significantly different situation from those in *Vaezkoroni* and *Founder.* In this case, Wilson had neither pursued the administrative avenue to a final determination nor was any complaint pending with an administrative body. Rather, his KCHR complaint had been ordered withdrawn and the EEOC had issued a "Notice of Right to Sue." Under the doctrine of election of remedies, we conclude that the factual differences in the cases are such that Wilson's circuit court claim was not barred.

According to general authority, jurisdictions differ concerning whether the commencement of an action constitutes an election of a remedy which precludes another action.

---

7. The court also held that the provisions of KRS Chapter 344 apply equally to the KCHR and to local human rights commissions such as the Lexington–Fayette Urban County Human Rights Commission. *Id.* at 342.

In some jurisdictions, the beginning of a suit is an unequivocal act of election. This rule applies to the filing of an administrative claim, and an alternative action in court will be allowed only if the pending claim is dismissed for administrative convenience, if the filing of a lawsuit is not forbidden by statute or regulation, or if the prejudice to the defendant is truly minimal.

In other jurisdictions, however, the mere commencement of an action does not determine the right to elect between inconsistent remedies, and the doctrine applies only when a cause of action is prosecuted to judgment.

Courts sometimes take the position that it is the pendency, rather than the commencement, of an action which precludes the plaintiff from maintaining another action for an inconsistent remedy. A second action may be brought only if the first cause of action is no longer pending when the second action is commenced.

25 Am.Jur.2d *Election of Remedies* § 14 (1996). The question before this court is whether Kentucky law concerning the doctrine of election of remedies allowed Wilson to withdraw his administrative claim and file a civil complaint in the circuit court.

Two other cases were addressed by the parties to the trial court but were not referenced to this court in their briefs. In *Canamore v. Tube Turns Div. Of Chemetron Corp.,* Ky.App., 676 S.W.2d 800 (1984), an aggrieved employee filed a complaint with the EEOC. *Id.* at 802. The EEOC deferred the charges to the KCHR. Some two years later, with no action having been taken by the KCHR, the EEOC determined that there was no reasonable cause to believe the employee's allegations were true and issued a "Notice of Right to Sue." *Id.* There was no evidence in the record of any KCHR proceeding. *Id.* In *Canamore,* a panel of this court held that the employee's civil action in circuit court was not precluded so long as the employee did not proceed to federal court and the KCHR never reached a final determination in the proceeding before it. *Id.* at 804. In short, the "two bites of the apple" argument was not effective where the aggrieved employee had never received a final order from the state's administrative body, where no administrative claim was currently pending, and where he elected not to proceed in federal court.

A fact situation similar to *Canamore* was presented to the Kentucky Supreme Court in *Clifton v. Midway College,* Ky., 702 S.W.2d 835 (1985). Once again, an aggrieved employee filed a complaint with the EEOC. *Id.* at 836. The EEOC deferred to the KCHR which in turn took no action other than to relinquish the claim back to the EEOC. *Id.* The EEOC then issued a "Notice of Right to Sue" letter. *Id.* Thereafter, the employee filed suit against the employer in the circuit court. The circuit court entered a summary judgment in favor of the employer dismissing the employee's complaint. *Id.* The circuit court held that the employee had a claim before the KCHR which precluded her from filing a civil action in the courts. *Id.* Further, the circuit court held that the notification received from the EEOC constituted a final determination by the administrative agency and that, therefore, the circuit court lacked jurisdiction. *Id.*

In granting discretionary review of this court's opinion affirming the trial court, the Kentucky Supreme Court reversed. *Clifton,* 702 S.W.2d at 838. The court held that an individual who has charges of discrimination referred by the EEOC to the KCHR, but without an order issued by the KCHR, is not precluded from pursuing a civil action under KRS 344.450. *Id.* at 837.

The court noted that the KCHR neither gave consideration to the charges nor issued any order relating to the employee's claim. *Id.* Further, the court noted that "the complainant has been the victim of a bureaucratic shuffle without the benefit of any kind of evidentiary hearing on the merits of her charges." *Id.*

■ In light of our discussion of Kentucky cases involving the election of remedies for civil rights violations and in light of the provisions of KRS 344.270, we conclude that Kentucky law does not prohibit Wilson from filing his civil action in the circuit court even though he had previously filed a complaint with the KCHR. Other Kentucky cases involving the doctrine of election of remedies support this conclusion. In *Riley v. Cumberland & Manchester R. Co.*, 234 Ky. 707, 29 S.W.2d 3 (1930), the court acknowledged that:

> It is the general rule that as between actions for damages for breach of a contract and suits for specific performance that the mere beginning of the action, or suit, does not constitute an irrevocable election unless it has caused an advantage to the plaintiff or a detriment to the defendant.

*Riley*, 29 S.W.2d at 4. In *Joseph Goldberger Iron Co. v. Cincinnati Iron & Steel Co.*, 153 Ky. 20, 154 S.W. 374 (1913), the court noted that the institution and dismissal without prejudice of a civil action in Cincinnati, Ohio, was not a conclusive election against the maintenance of an action in Kentucky courts. 154 S.W. at 376. The key fact recognized by the court was that there had been no judgment or decree in the Cincinnati suit. *Id.* The court stated that "[t]he general rule is that the prosecution of one remedial right, to judgment or decree, whether the judgment is for or against the plaintiff, is a decisive act which constitutes a conclusive election, and bars

the subsequent prosecution of inconsistent remedial rights." *Id.*

■ *Speck v. Bowling*, Ky.App., 892 S.W.2d 309 (1995), is a later case involving the doctrine of election of remedies. Bowling was injured in an automobile accident when his automobile was struck by an automobile driven by Speck, a state trooper. *Id.* at 310–11. Bowling initially filed a claim against the Commonwealth before the Board of Claims, but that complaint was abandoned. *Id.* at 311. He then filed a civil action against Speck in the Clay Circuit Court. *Id.* A panel of this court stated that Bowling had alternative remedies in seeking damages in the Board of Claims or seeking damages in circuit court by way of a tort action. *Id.* The court rejected Speck's election of remedies argument and held that Bowling could pursue his circuit court action even though he had previously filed and abandoned a Board of Claims action. *Id.* In short, under Kentucky law the doctrine of election of remedies "means that when a person has at his disposal two modes of redress, which are contradictory and inconsistent with each other, his deliberate and settled choice *and pursuit* of one will preclude his later choice and pursuit of the other." (Emphasis added.) *Collings v. Scheen*, Ky., 415 S.W.2d 589, 591 (1967).

Assuming we are correct in concluding that Wilson had a right to withdraw his claim before the KCHR prior to a final determination on the merits and to file a complaint with the circuit court, there may be a question concerning how long before a final determination Wilson was required to withdraw his claim. Obviously, a party may not file a claim, proceed to trial or hearing, and then withdraw the claim before the ruling body issues a final determination. In this case, Wilson filed his KCHR complaint on March 31, 1999, and requested withdrawal of it two months la-

ter. The hearing was scheduled to be held in late December 1999, nearly seven months later. Although Lowe's had responded to a document/information request and had filed an answer and amended answer, it was obviously not prejudiced by the withdrawal of the claim. *See Riley,* 29 S.W.2d at 4; 25 Am Jur 2d, *supra,* § 14. Further, the chairperson of the KCHR gave Wilson written consent to withdraw his claim without prejudice pursuant to the administrative regulation. In short, we conclude that Wilson withdrew his administrative claim sufficiently early in the process so as not to prejudice Lowe's to any significant extent.

Despite our view that Wilson should have been allowed to file his claim in circuit court in light of Kentucky law regarding the doctrine of election of remedies and in light of the factual differences in this case from the *Vaezkoroni* and *Founder* cases, we must nonetheless address language from each case which appears to favor Lowe's and the trial court's position. As we have noted, in the *Vaezkoroni* case the Kentucky Supreme Court stated that "[o]nce any avenue of relief is chosen, the complainant must follow that avenue through to its final conclusion." 914 S.W.2d at 343. Since the *Vaezkoroni* case involved an employee who had prosecuted his claims to the administrative body to a final determination, that language is clearly dicta.[8]

Similarly, in the *Founder* case a panel of this court stated that "[f]rom our reading of the language in KRS 344.270 and *Vaezkoroni,* once a complaint is filed with the Commission, a subsequent action in circuit court based on the same civil rights violation[s] is barred." 23 S.W.3d at 223. Since the employee's circuit court complaint in *Founder* was barred by KRS 344.270 for lack of jurisdiction because the complaint was still pending with an administrative body, this language in the *Founder* case is also dicta. Like *Vaezkoroni, Founder* did not involve facts like those in this case.

Finally, the United States District Court for the Western District of Kentucky, Louisville Division, has recently addressed the issue before this court in *Grego v. Meijer, Inc.,* 187 F.Supp.2d 689, 691 (W.D.Ky.2001). In *Grego,* the aggrieved employee filed a sex discrimination complaint with the KCHR on May 20, 1998. *Id.* at 691. On November 30, 1999, she requested the KCHR to withdraw her complaint. *Id.* After the KCHR withdrew the complaint without prejudice, she filed a civil complaint in the Jefferson Circuit Court. *Id.* The employer moved the case to federal court based on diversity jurisdiction. *Id.*

The federal district court in *Grego* denied the employer's motion to dismiss which was based on the doctrine of election of remedies. *Id.* at 693. The court examined the *Vaezkoroni* and *Founder* cases, predicted that the Kentucky Supreme Court would not follow *Founder,* and held that Grego could file her complaint in circuit court even though she had previously filed a complaint with the KCHR. *Id.* at 692. Even though the *Grego* case is not binding on this court, we agree with its reasoning. In short, we

---

**8.** "A statement in an opinion not necessary to the decision of the case is obiter dictum. It is not authoritative though it may be persuasive or entitled to respect according to the reasoning and application or whether it was intended to lay down a controlling principle." *Cawood v. Hensley,* Ky., 247 S.W.2d, 27, 29 (1952). "The test is whether the statement was or was not necessary to the determination of the issues raised by the record and considered by the court." *Utterback's Adm'r v. Quick,* 230 Ky. 333, 338, 19 S.W.2d 980, 983 (1929).

conclude that the trial court erred in awarding Lowe's a summary judgment based on Lowe's election of remedies argument.

The second issue is whether the trial court correctly dismissed Wilson's IIED claim by summary judgment. The court held that "the record herein does not contain sufficient evidence of an egregious character to survive a motion for summary judgment." The court cited *Humana of Kentucky, Inc. v. Seitz*, Ky., 796 S.W.2d 1 (1990).

The tort of IIED was first recognized by the Kentucky Supreme Court when it adopted the Restatement (Second) of Torts, § 46 in *Craft v. Rice*, Ky., 671 S.W.2d 247, 251 (1984). The court adopted the following:

### § 46. Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id.* In *Kroger Co. v. Willgruber*, Ky., 920 S.W.2d 61 (1996), the Kentucky Supreme Court stated that "[c]itizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." *Id.* at 65.

Wilson maintains the trial court erred in determining that the allegations set forth in his IIED claim were insufficient to survive the appellees' summary judgment motion. We agree. Wilson alleged in his deposition that he was subjected to racist remarks virtually every day during his employment with Lowe's at the Fern Valley store. A few examples cited by Wilson are:

- Choate told Wilson "it wouldn't be hard to find something wrong that a black does anyway."

- Choate told Wilson that a black man was hung in his hometown a couple of years earlier and, in response to Wilson's question as to why, Choate stated that "they didn't need a reason."

- Duncan indicated to Wilson that he (Duncan) was a racist.

- Duncan stated to his young daughter in front of Wilson that "if you bring one of those home with you, I'll kill you." The comment was allegedly made in the break room in front of several employees who all laughed at the comment.

- Duncan told Wilson that he (Wilson) was subjected to racist remarks because "I guess it's just the penalty for being born black."

- Choate told Wilson that Rodney King "needed his black butt whipped."

- Duncan stated that Jeffrey Dahmer's killing of a black boy indicated that Dahmer was one of the few white people who "liked dark meat."

- Duncan told Wilson to "watch yourself making those Bullitt County rednecks mad … they'll come back with hoods on and hang you."

- After a comment about Michael Jordan's hang time, Phillips said "don't ever speak of hanging when a black man's around."

- Phillips told Wilson that he was prejudiced, that he didn't like blacks, but that he hated Vietnamese people more.

■ Choate, Duncan, and Phillips told Wilson that neither he nor any other black person would ever be a store manager at the Lowe's store.

■ When company employees were eating a cake that was half white and half chocolate and had writing on it, an employee made a remark that "blacks can't read anyway." The comments were allegedly made in front of other employees and managers.

Wilson testified in his deposition that racial comments such as those above were made almost every day by the three individual store managers and by other employees in his presence. He further testified that he complained to his superiors about the comments but that no action was taken to stop them.

Comment h of section 46 of the Restatement (Second) of Torts states as follows:

It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

Comment d of the Restatement states in part that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

In *Seitz*, the court stated that "[t]he question we must decide, therefore, is whether, as a matter of law, taking the evidence of the respondent-plaintiff as being true, that evidence falls within the purview of § 46 and the four criteria we set out in *Craft*." *Seitz*, 796 S.W.2d at 3. The four criteria to establish an IIED claim are: (1) the wrongdoer's conduct must be intentional or reckless, (2) the conduct must be outrageous and intolerable, (3) there must be a causal connection between the conduct and the emotional distress, and (4) the emotional distress must have been severe. *Craft*, 671 S.W.2d at 249.

We conclude the trial court erred in holding that Wilson's IIED claim was not sufficient to survive the appellees' summary judgment motion. If Wilson's allegations are true, then he was subjected to racial remarks on nearly a daily basis by his coworkers and supervisors for a period of approximately seven years.[9] If such conduct occurred, we believe a jury could find such conduct to be intentional, outrageous, and intolerable. As stated in comment h of the Restatement, if reasonable minds may differ as to whether the alleged conduct was sufficiently extreme and outrageous so as to result in liability, then the matter is subject to determination by a jury.

Finally, now that we have reinstated Wilson's IIED claim, we must address the appellees' argument that this claim is preempted or subsumed by Wilson's KRS Chapter 344 claims. The trial court addressed this issue and held that Wilson's IIED claim "is not barred as a matter of

**9.** The facts of this case are distinguishable in this regard from the facts in *Seitz*, the case upon which the trial court relied. The callous and insensitive remarks of the hospital personnel in *Seitz* occurred during only one short incident and were not part of "a pattern of conduct." *Id.* at 4. In the case *sub judice*, however, the offensive conduct allegedly occurred on a regular basis for approximately seven years.

law by the doctrine of preemption." As we have noted, Wilson's IIED claim was brought against both Lowe's and the three individuals.

The appellees did not file a cross-appeal on this issue, perhaps because the trial court had ruled in their favor and dismissed the IIED claim on its merits. Now that we have reinstated the claim, we must address the issue. Citing *Cooksey Bros. Disposal Co. v. Boyd County*, Ky.App., 973 S.W.2d 64 (1997), the appellees maintain that this court has the authority to affirm the trial court for different reasons than it gave in its judgment. *Id.* at 70.

■ Wilson's KRS Chapter 344 claims were brought against Lowe's only and not against the three individual store managers. The IIED claim was brought against both Lowe's and the three individuals. We agree with the appellees that Wilson's IIED claim against Lowe's was subsumed by its KRS Chapter 344 claims. However, we disagree that the IIED claims against the three individuals were subsumed by the KRS Chapter 344 claims against Lowe's.

· ■ KRS 344.020(1)(b) extends protection to the "personal dignity and freedom from humiliation" of individuals. This has been interpreted as allowing "claims for damages for humiliation and personal indignity[.]" *McNeal v. Armour and Co.*, Ky.App., 660 S.W.2d 957, 958 (1983). Similarly, an IIED claim seeks damages for extreme emotional distress. See *Rigazio v. Archdiocese of Louisville*, Ky.App., 853 S.W.2d 295, 299 (1993). "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans*, Ky., 700 S.W.2d 399, 401 (1985). Thus, Wilson's IIED claim against Lowe's was subsumed by his KRS Chapter 344 claims. This same conclusion was reached by the federal court in *Messick v. Toyota Motor Manufacturing, Kentucky, Inc.*, 45 F.Supp.2d 578, 582 (E.D.Ky.1999). Therefore, we affirm the trial court's dismissal of Wilson's IIED claim against Lowe's.

■ Nevertheless, we conclude that Wilson's IIED claim against the three individual store managers was not subsumed by his KRS Chapter 344 claims against Lowe's. The three individual store managers rely on the *Messick* case to support their argument. We do not read *Messick* that broadly, however. In *Messick*, the employee filed a KRS Chapter 344 claim and an IIED claim against the employment agency, her employer. In dismissing the IIED claim, the court held that "because Plaintiff finds an existing form of recovery for her emotional distress under the Kentucky Civil Rights Act, she fails to state a claim of intentional infliction of emotional distress against Olsten." *Id.* at 582. In reviewing that case, it is significant to note that there was no mention of dismissing the IIED claims against the individual. Clearly, the fact that a civil rights claim may be filed against an employer does not prohibit the filing of an IIED claim against the offending individuals against whom no civil rights claim could have been filed.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed in part, reversed in part, and remanded.

ALL CONCUR.