The KROGER COMPANY, Appellant,

v.

Joanne BUCKLEY, Appellee.

No. 2002–CA–000678–MR.

Court of Appeals of Kentucky.

May 30, 2003.

Rehearing Denied Aug. 15, 2003.

David B. Sandler, Brent R. Baughman, Louisville, KY, for appellant.

Lee Huddleston, Bowling Green, KY, for appellee.

Before COMBS, GUIDUGLI and SCHRODER, Judges.

*OPINION*

GUIDUGLI, Judge.

The Kroger Company, d/b/a Country Oven Bakery (hereinafter referred to as "Kroger" or "Country Oven"), appeals from a judgment of the Warren Circuit Court reflecting a jury verdict in favor of Joanne Buckley ("Buckley") in her action alleging statutory disability discrimination. For the reasons stated herein, we must vacate the judgment and remand the matter to the Warren Circuit Court.

In or around 1981, Buckley began her employment with Country Oven in Warren County, Kentucky. Country Oven supplies Kroger stores with frozen bread and bread products. Buckley worked in production, and was assigned various jobs during the course of her employment. In the late 1980s, the record indicates that Buckley was assigned a "helper relief" position in which she would take over job duties for other employees when they took lunch breaks and rest breaks.

In approximately 1987, Buckley began working in the position of "bread and roll divider relief", or simply "divider relief". In about 1994, she complained to management that another line job called "mixer relief" was paid more than "divider relief". In apparent response, Country Oven combined the positions, and Buckley undertook both divider relief and mixer relief duties.

In 1996, Buckley was a team member in divider relief and mixer relief with an employee who, according to the record, suffered from manic depression. The em-

ployee apparently was described to Buckley as "crazy", and allegedly had been hospitalized on more than one occasion and had threatened another employee with a knife.

In May of that year, Buckley was working with the employee when he allegedly failed to properly label the products they were working on. When Country Oven learned of the mistake, it suspended both Buckley and the employee concluding that both individuals were responsible for the mistake. Buckley alleges that this suspension was the first of a series of events which destroyed her mental health. She would later maintain that after her suspension, Country Oven violated its teamwork policy and ordered her not to help the employee avoid further mistakes. She further claimed that she was told that she would be punished when the employee made more mistakes, and that she was ordered to report to management any instance of a mistake being made by anyone in the plant.

Buckley maintained that she followed these orders through the remainder of 1996, and became increasingly fearful of having to "snitch" on the unstable employee. In the fall of 1996, Buckley sought treatment from her primary care physician, who diagnosed her with post traumatic stress disorder. Buckley began receiving treatment from a psychiatrist, and claimed that she was no longer able to work as of April, 1997. Buckley then began a leave of absence from her employment.

On May 6, 1997, Buckley filed the instant action in Warren Circuit Court against Kroger and five individual supervisors alleging disability discrimination and retaliation/conspiracy under the Kentucky Civil Rights Act ("KCRA"), intentional infliction of emotional distress/outrageous conduct (hereinafter referred to as "IIED" or "outrageous conduct"), negligent infliction of emotional distress, and assault and battery. The matter was removed to United States District Court the following month, and returned to the Warren Circuit Court docket on October 7, 1997.

Kroger moved to dismiss the outrageous conduct claim as preempted by the disability discrimination claim, and also sought to dismiss Buckley's claim for punitive damages. These motions were denied, as were subsequent renewed motions. The action then languished for more than three years with little activity. In April, 2001, Buckley withdrew her claim of assault and battery.

Country Oven had a policy of terminating the employment of anyone whose leave of absence extended for more than one year. In March, 1998, some 10 months after the complaint was filed, Buckley contacted Country Oven by letter and sought to return to work. As a condition of her return, she advised Country Oven through counsel that her psychiatrist imposed limitations on the scope of her employment. These included limiting Buckley to assignment in divider relief but not mixer relief; a maximum work period of eight hours per day, five days per week; ending Buckley's responsibility to report the mistakes of other employees to management; limitation on lifting to 10 pounds; and, limitation on the repetitive use of her right hand due to carpal tunnel syndrome.

Upon considering Buckley's request, on April 7, 1998, Country Oven concluded that Buckley's restrictions could not be accommodated because she could not perform the essential job functions of her job, nor of any vacant job. Buckley's employment was terminated.

Trial on the remaining claims commenced in Warren Circuit Court on December 5, 2001. After Buckley's case-in-chief, the trial court dismissed all claims

against the individual defendants, and dismissed the negligent infliction of emotional distress claim against Kroger. The court later dismissed the KCRA conspiracy claim. Thus, only the KCRA disability discrimination and outrageous conduct claims remained.

After the close of the evidence, Kroger objected to various elements of the jury instructions including the instruction on punitive damages. After considering the proof, the jury returned a verdict in favor of Buckley on both claims. By separate votes, it awarded Buckley $363,485 in damages for lost wages and benefits, $19,899 for medical expenses, and $135,000 for humiliation. It went on to award Buckley $1,250,000 in punitive damages. The trial court subsequently rendered a judgment reflecting the verdict, and this appeal followed.

Kroger first argues that the trial court committed reversible error in failing to grant its motions for a directed verdict and judgment notwithstanding the verdict ("JNOV") on Buckley's disability discrimination and outrageous conduct claims. It maintains that the outrageous conduct claim is preempted by the KCRA claim as they are based on the same facts. It goes on to argue that even if the claims may be prosecuted simultaneously, Buckley failed to prove essential elements of those claims. Kroger maintains that Buckley was not a "qualified individual with a disability" entitled to KCRA protection, and that she did not seek, and could not have been provided the "reasonable accommodation" addressed by the KCRA. Lastly on this argument, Kroger maintains that Buckley's assertion that she was able to return to work is contradicted by her social security application in which she represented that she was unable to work. In sum, Kroger maintains that it was entitled to a directed verdict or JNOV on both claims.

Shortly after the conclusion of the trial, a panel of this court rendered *Wilson v. Lowe's Home Center,* Ky.App., 75 S.W.3d 229 (2001). *Wilson* held in relevant part that when a plaintiff prosecutes a KRS Chapter 344 claim and an outrageous conduct claim concurrently, the former preempts the latter. We stated as follows:

Wilson's KRS Chapter 344 claims were brought against Lowe's only and not against the three individual store managers. The IIED claim was brought against both Lowe's and the three individuals. We agree with the appellees that Wilson's IIED claim against Lowe's was subsumed by its KRS Chapter 344 claims. However, we disagree that the IIED claims against the three individuals were subsumed by the KRS Chapter 344 claims against Lowe's.

KRS 344.020(1)(b) extends protection to the "personal dignity and freedom from humiliation" of individuals. This has been interpreted as allowing "claims for damages for humiliation and personal indignity[.]" *McNeal v. Armour and Co.,* Ky.App., 660 S.W.2d 957, 958 (1983). Similarly, an IIED claim seeks damages for extreme emotional distress. See *Rigazio v. Archdiocese of Louisville,* Ky. App., 853 S.W.2d 295, 299 (1993). "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans,* Ky., 700 S.W.2d 399, 401 (1985). Thus, Wilson's IIED claim against Lowe's was subsumed by his KRS Chapter 344 claims. This same conclusion was reached by the federal court in *Messick v. Toyota Motor Manufacturing, Kentucky, Inc.,* 45 F.Supp.2d 578, 582 (E.D.Ky.1999). Therefore, we affirm

the trial court's dismissal of Wilson's IIED claim against Lowe's.

*Wilson,* 75 S.W.3d at 239.

*Wilson* is clear and unambiguous in its holding that a KRS Chapter 344 claim preempts a common law IIED/outrageous conduct claim. Buckley attempts to distinguish *Wilson* from the facts at bar, arguing that her Chapter 344 disability discrimination claim relates solely to Kroger's failure in 1998 to reasonably accommodate her disability and allow her to return to work, whereas the outrageous conduct claim addresses the 1996 actions of Kroger supervisors which resulted in her diagnosis of post traumatic stress disorder.

We do not find this argument persuasive. Buckley's complaint alleges at Paragraph 10 that, "[O]n or about May 6, 1996, Defendants took improper, adverse employment action against Plaintiff and began forcing and continued forcing Plaintiff to participate in discriminatory activity against a fellow employee in violation of the Kentucky Civil Rights Act." It goes on to allege in Paragraph 15 that, "[T]he acts and omissions of Defendants *also constituted* intentional infliction of mental distress in accordance with Kentucky common law." (Emphasis added). Similarly, it is somewhat confusing as to why Buckley relies on facts occurring in 1998 (Kroger's refusal or inability to accommodate her reasonable needs and allow her to return to work) in support of a complaint filed 10 months earlier. The complaint was never amended to include a claim of disability discrimination occurring after Buckley went on full-time leave in April, 1997. Clearly, the facts upon which Buckley relied in support of her disability discrimination claim were the same facts relied upon in support of the common law claim. As such, the issue at bar falls within the scope of *Wilson.*

As the parties are well aware, the jury was instructed to return one damage award representing the combined damages of both the statutory and common law claims. As it is impossible to now sever the statutory claim damages and common law claim damages, we must vacate the judgment on appeal and remand the matter for a new trial. On remand, *Wilson* will operate to bar the concurrent prosecution of KRS Chapter 344 and IIED/outrageous conduct claims.

Kroger raises additional claims of error in which it maintains that punitive damages should not have been awarded, that Buckley's award of lost wages should be offset by her receipt of disability benefits, and that errors in the jury instructions and an evidentiary ruling compel a new trial. As we are vacating the judgment pursuant to *Wilson, supra,* and remanding the matter for a new trial, these arguments are moot.

For the foregoing reasons, we vacate the judgment of the Warren Circuit Court and remand the matter for a new trial.

ALL CONCUR.