Cynthia L. PUCKE, Appellant

v.

J.A. STEVENS MOWER CO., INC.; Ronald E. Garnett; and Dana Lambelz, Appellees.

No. 2006–CA–002106–MR.

Court of Appeals of Kentucky.

Sept. 28, 2007.

Anthony J. Bucher, Covington, KY, for appellant.

Kelly A. Schoening, Kevin Hoskins, Deters, Benzinger & LaVelle, P.S.C., Crestview Hills, KY, for appellees.

Before NICKELL, LAMBERT, and STUMBO, Judges.

## OPINION

NICKELL, Judge.

Cynthia L. Pucke (hereinafter "Pucke") has appealed the dismissal of her sexual discrimination suit against her employer, J.A. Stevens Mower Co., Inc. (hereinafter "J. A. Stevens"), and its two sole shareholders, Ronald E. Garnett (hereinafter "Garnett") and Dana Lambelz (hereinafter "Lambelz"). For the reasons set forth herein, we affirm in part, reverse in part, and remand to the Boone Circuit Court.

Pucke was hired in March or May[1] of 2003 by J.A. Stevens, a small company with seven employees. Immediately thereafter, Pucke and Lambelz, the president of J.A. Stevens and Pucke's immediate supervisor, began a sexual relationship. During the course of the relationship, Lambelz frequently utilized corporate assets to fund the affair. Garnett, the company's secretary/treasurer, was aware of these expenditures but made no attempt to curtail the spending.[2] Lambelz often threatened to fire Pucke from her position with J.A. Stevens during the turbulent periods of the relationship. It was made clear to Pucke that her future with the company depended upon her continued participation in the sexual relationship.

In late 2004, Pucke alleged Lambelz offered to relocate her to a farmhouse owned by the company and to promote her to the manager of that property. Pucke agreed and the move was funded by J.A. Stevens. Shortly thereafter, Lambelz discontinued the sexual relationship with Pucke, demanded that she vacate the farmhouse, and terminated her employment.

On July 21, 2005, Pucke filed suit against J.A. Stevens, Lambelz, and Garnett, alleging (1) gender discrimination, (2) sexual harassment, (3) retaliation, (4) wrongful discharge, and (5) intentional infliction of emotional distress (IIED). In addition to compensatory damages, costs, and attorney fees, Pucke also demanded punitive damages be awarded. The appellees filed a joint answer to the complaint on August 24, 2005, and moved the trial court to grant them a summary judgment on September 30, 2005. In the motion for summary judgment, the appellees argued that since the first three counts of the complaint were based on alleged violations of Kentucky Revised Statutes (KRS) Chapter 344[3] they should be dismissed as J.A. Stevens did not meet the statutory definition of an "employer."[4] Further, they argued the remaining common law claims should be dismissed as being preempted by KRS Chapter 344. The trial court granted summary judgment and dismissed Pucke's complaint on April 20, 2006. Pucke's subsequent motion to alter, amend, or vacate[5] was denied on September 6, 2006, and this appeal followed.

---

1. The parties disagree on the date of hire. However, for purposes of this appeal, the precise date is of no consequence.

2. Lambelz and Garnett were the only shareholders of J.A. Stevens.

3. KRS Chapter 344 is the codification of the Kentucky Civil Rights Act.

4. KRS 344.030(2) defines an "employer" as an entity having eight or more employees within the Commonwealth in each of twenty or more calendar weeks in the current or preceding calendar year. It is undisputed on appeal that J.A. Stevens did not have a sufficient number of employees at any pertinent time to meet this statutory requirement.

5. Pucke requested relief only from the dismissal of the wrongful discharge, IIED, and punitive damages portions of her complaint.

On appeal, Pucke concedes that J.A. Stevens did not meet the statutory definition of "employer" at any time pertinent to her claims. It is also conceded by Pucke that the trial court correctly dismissed her claims based upon alleged violations of KRS Chapter 344. Thus, we affirm the trial court's dismissal of Pucke's statutory claims.

The sole issue on appeal is whether the trial court erred in finding Pucke's common law claims of wrongful discharge and IIED were subsumed by her KRS Chapter 344 claims. We hold they were not subsumed and dismissal was improper.

In *Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky.1985), the Supreme Court of Kentucky held that "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." In its discussion of the public policy behind the prohibition on sexual discrimination in the employment arena, as codified in KRS 344.040, the Supreme Court went on to state the "statute not only creates the public policy but preempts the field of its application." *Id.* The Kentucky Commission on Human Rights (hereinafter "KCHR") is authorized by KRS Chapter 344 to adjudicate sexual discrimination claims. Further, the sole remedy for claims brought under KRS Chapter 344 is with KCHR, not with the courts. Thus, as KRS Chapter 344 subsumes those claims for which a remedy is provided in that chapter, we must determine whether Pucke had a remedy available to her on her common law claims.

It is undisputed that several of Pucke's claims were statutorily prohibited because J.A. Stevens did not satisfy the definition of an "employer" under KRS 344.030(2). However, J.A. Stevens urges us to adopt the view that any of Pucke's claims that reference discriminatory employment con-duct should be governed by the provisions of KRS Chapter 344, regardless of whether the claim arose under that chapter or grew out of common law. We refuse to do so. The remedies provided in KRS Chapter 344 do not extend to common law claims such as those advanced by Pucke. Further, while the legislative intent is clear that small employers should be exempt from application of KRS Chapter 344, nothing therein indicates an intention to completely absolve such employers from liability for discriminatory conduct which amounts to outrageous conduct or wrongful termination. Thus, we hold Pucke's common law claims were not subsumed by KRS Chapter 344. Our position is supported by the decision in *Wilson v. Lowe's Home Center,* 75 S.W.3d 229, 239 (Ky.App. 2001), wherein we previously held that in the absence of the availability of a remedy under KRS Chapter 344 for a claim of IIED, a claim of outrageous conduct is not precluded. While the facts in *Wilson* are somewhat different from the case *sub judice,* the principles of law are the same.

Under the facts of this case and the plain language of Kentucky law, foreclosure of Pucke's statutory civil rights claims does not in any way foreclose the availability of remedies arising under her remaining common law claims. To hold otherwise would lead to the absurd result that an employer could completely escape liability for discriminatory work-related conduct by simply maintaining a work force of less than eight employees, thereby falling outside the statutory definition of an "employer" under KRS 344.030(2). This result would deny all similarly aggrieved parties any legal recourse. We cannot agree that this is the state of the law within the Commonwealth.

Finally, having held Pucke's common law claims were not preempted by KRS Chapter 344, our review of the trial court's

entry of summary judgment in favor of J.A. Stevens fails to disclose whether a proper summary judgment analysis under *Steelvest v. Scansteel,* 807 S.W.2d 476 (Ky. 1991), was performed with regard to Pucke's common law claims. Thus, while we affirm the Boone Circuit Court's dismissal of Pucke's KRS Chapter 344 claims, we reverse the trial court's entry of summary judgment as to Pucke's common law claims, and remand them to the Boone Circuit Court for further proceedings consistent with this Opinion.

ALL CONCUR.